DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Huron County Court of Common Pleas which, on February 10, 2004, denied the motion to suppress filed by appellant, Beverly A. McMillin. Appellant pled no contest on February 11, 2004, to the single count in the indictment, possession of drugs, in violation of R.C. 2925.11(A)(C)(4)(b), a felony of the fourth degree. Appellant was sentenced to two years of community control, 100 hours of community service, and was ordered to pay the costs of prosecution and $250 for her court appointed counsel. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} The vehicle in which appellant was a passenger was pulled over during a traffic stop. The driver and appellant were asked to exit the vehicle and were read their Miranda rights. Ultimately, appellant withdrew crack cocaine from her pocket and was placed under arrest. Appellant argued to the trial court that the warrantless search of her person constituted an unreasonable seizure, in violation of her rights under the United States and Ohio Constitutions, and sought suppression of the evidence seized as being fruit of the poisonous tree. Appellant's motion to suppress was denied. It is from this decision that appellant appeals, and raises the following sole assignment of error.
 {¶ 3} "The trial court erred to the prejudice of the defendant-appellant when it overruled her motion to suppress evidence, where such evidence was obtained through a warrantless, unreasonable seizure of her automobile and/or her person, in violation of her rights under the U.S. and Ohio Constitutions."
 {¶ 4} Appellant argues that the trial court's decision was erroneous on the basis of three separate issues: (a) the warrantless traffic stop was pretextual and constitutes an unreasonable seizure; (b) if the stop was legal, the scope and duration of the stop exceeded the extent necessary to effectuate the purpose of the stop; and (c) the contraband was not voluntarily surrendered and, therefore, it was illegally obtained.
 {¶ 5} At the suppression hearing, which took place on January 26, 2004, the following individuals testified for the prosecution: Deputy M. Spencer, Deputy Todd Wagner, and Major Gregory Englund. Appellant testified on her own behalf. The following pertinent testimony was given.
 {¶ 6} Deputy Wagner testified that, on August 1, 2003, a man (hereinafter the "informant") walked into the sheriff's office and asked to speak to a deputy. The informant provided Wagner with the following information: (1) appellant would be driving from Cleveland to her home in Huron County transporting crack cocaine; (2) the approximate time of appellant's return; (3) the address of appellant's residence; (4) a description of appellant's vehicle; (5) the route appellant would take; and (6) a description of two possible passengers.
 {¶ 7} As to the identity of the informant, Wagner testified that he could not remember the informant's name. Wagner, however, did remember that the informant gave a name because Wagner recalled checking to see whether there were any outstanding warrants with that name. There were none. Wagner further testified that he did not know the informant prior to the meeting and had never received information from him before.
 {¶ 8} As to the informant's information, Wagner testified he ran a check through LEADS and found that appellant owned a vehicle that matched the informant's description of her vehicle. Wagner contacted Major Englund, the shift supervisor, by cell phone and relayed to him all of the pertinent information.
 {¶ 9} Major Englund then testified that he drove past appellant's residence and found that her vehicle was not there. At approximately the time the informant suggested appellant would return from Cleveland, Englund positioned his patrol car along the route the informant described appellant would be driving home. Shortly thereafter, Deputy Wagner arrived at the same location. At Englund's instruction, a third patrolman, Deputy Matthew Spencer began patrolling in the general area of appellant's supposed route.
 {¶ 10} As projected, appellant's car passed the location Englund and Wagner were positioned. Englund pulled out and followed the car. After approximately one mile, the car crossed the center line, at a curve in the road, as it approached an intersection. Englund turned on his overhead lights and called into dispatch that he was making the stop.
 {¶ 11} Englund testified that after appellant's vehicle pulled to the side of the road, he remained near his patrol car until Deputy Spencer arrived moments later. Spencer testified that he arrived on the scene because it was normal procedure to assist another unit during a traffic stop when patrolling close to the stop. Englund testified he did not approach the vehicle until Spencer arrived because of the number of occupants and because the driver was "doing a lot of moving around, bends, moving his hands, bending forward, look[ing] toward the passenger." The officers approached the vehicle at approximately 8:18 p.m., close to dusk. Englund went to the driver side of the vehicle and instructed Spencer to approach the passenger side.
 {¶ 12} The driver of the car was one of the persons whom the informant had identified as a likely occupant of the vehicle. Englund testified that when he approached the vehicle, the driver had "his right hand on his lap and his left hand was down to the side of him by the seat." For safety reasons, Englund testified that he asked the driver to step out of the vehicle and walk to the back of the vehicle. While he was walking, the driver put his hands in his pockets. Englund asked the driver to place his hands on the trunk, patted him down, and found a pocket knife in his left front pocket. Deputy Wagner, who was then also on the scene, read the driver his Miranda warnings. Englund never arrested the driver, but a citation for driving left of center was issued.
 {¶ 13} Appellant was in the front passenger seat of the automobile. Deputy Spencer testified that appellant "continuously placed her hands under her leg and down to the side of the door, the side of the seat closest to the passenger door at least two times." After being advised at least two times to keep her hands where Spencer could see them, appellant's furtive movement continued. Spencer testified that he became concerned about his safety and therefore asked appellant to get out of the car and place her hands on the hood. When asked whether he was planning on patting her down for weapons, Spencer testified, "No, we didn't have a female officer on the scene, so I wouldn't have patted her down." Once out of the car, Spencer testified that appellant was "real fidgety and shaking" and took her hands off of the hood.
 {¶ 14} According to Spencer, he had no firsthand information as to why the stop was made other than he was ordered to patrol in that specific area because of information his supervisor had received regarding a "vehicle that was supposed to be in route from Cleveland with narcotics in it." Spencer also stated that he had no intention of taking appellant into custody, but "overheard Deputy Wagner mirandizing the male subject at the rear of the car." Due to appellant's behavior, and because he "wasn't [a] hundred percent sure what she had going on," Spencer read appellant her Miranda warnings. Appellant testified she "definitely believed" she was in custody at this point and told Spencer "I exercise my right to remain silent."
 {¶ 15} After invoking her right to remain silent, appellant took her hands from the car again and placed one in her front left pocket. Spencer testified that, in response to her movement, he asked appellant if she had "something in her pocket or on her person that [he] needed to be concerned with." Spencer testified, "It was at that point that she reached her hand back into her pocket, pulled out a cellophane baggy, placed it on the hood of the car and she said, that's my crack and I guess we're going to jail." Spencer arrested appellant and placed her in the back of his cruiser.
 {¶ 16} Appellant, however, recalled the event somewhat differently. Appellant testified, "[Spencer] asked me what was in my front pocket. I pulled out the right pocket and as to turn it inside out, and then I turned [out] the left. He says what's that? I said it's crack, but he had asked me to remove it. I didn't just voluntarily say here this is yours. I'm going to jail. I knew I was going to jail when I handed it to him."
 {¶ 17} Appellant further testified that while her hands were on the hood she informed Spencer that she had a condition called tortecolous, that she would not be able to move her neck, and needed to stretch it for a moment. During direct examination she explained her condition and its side effects. According to her testimony, appellant suffers from a neurological condition that causes her muscles to spasm. She testified that she suffers from ticks, often has trouble maintaining her balance, and fidgets involuntarily. When appellant is under stress the condition worsens. She testified that at the time of the stop she was sitting on her hands to control the spasms.
A. Pretextual Stop.
 {¶ 18} Appellant argues that the stop was a pretext to investigate drug activity and a violation of the prohibition on unreasonable searches and seizures. However, in Whren v. U.S. (1996) 517 U.S. 806 and Daytonv. Erickson (1996), 76 Ohio St.3d 3, it has been held that a police officer who observes a traffic violation may make a stop based upon the violation, even though the officer's purpose is to develop evidence of a more serious criminal violation. In other words, pretextual stops are not unlawful, per se. Ohio v. Lenoir (June 6, 1997), 2d Dist. No. 16246.
 {¶ 19} Appellant further argues, however, that Major Englund fabricated the traffic violation and insists that purported ambiguities in Englund's testimony requires this court to overrule the trial court's determination that the stop was valid. In this case, the initial stop was based upon appellant's violation of a traffic law which prohibits a motorist from weaving outside his lane of traffic. Englund personally observed the violation and stopped the car to determine its cause. In its judgment entry, the lower court specifically held "the [appellant's] car crossed the centerline briefly as it approached the intersection" and "the minor deviation from the lane of travel was sufficient to give Major Englund a reasonable articulable suspicion that an offence had occurred and justif[ied] his stop of the vehicle".
 {¶ 20} It is well established that, at a suppression hearing, "the evaluation of evidence and credibility of witnesses are issues for the trier of fact." State v. Mills (1992), 62 Ohio St.3d 357, 366, citingState v. Fanning (1982), 1 Ohio St.3d 19, 20. We must therefore defer to the trial court's finding regarding the credibility of Englund's testimony. See State v. Brown (2003), 100 Ohio St.3d 51, 2003-Ohio-5059, ¶ 15, citing State v. Moore (1998), 81 Ohio St.3d 22, 31. We find that there was sufficient testimony upon which the trial court could have relied in finding that Englund's testimony was credible and that appellant's vehicle crossed the centerline, thus providing reasonable grounds for warranting the traffic stop in this case.
B. Duration and Scope of Stop.
 {¶ 21} Appellant next argues that the traffic stop was overly intrusive and longer than necessary to effectuate the purpose of the stop. In particular, appellant argues that Spencer had no objective justification to continue appellant's detention beyond the time necessary to effectuate the purpose of the traffic stop and, as such, she was subjected to an unreasonable seizure. Appellant asserts that this case is analogous to State v. Robinette (1995), 73 Ohio St.3d 650, reversed and remanded; (1996) 519 U.S. 33, modified (Robinette II); (1997)80 Ohio St.3d 234 (Robinette III), in that the deputies extended the stop beyond the time necessary to effectuate the purpose of the seizure. Unlike Robinette, however, we find that there is no evidence that appellant was detained beyond the conclusion of the traffic stop. Rather, the testimony indicates that appellant was removed from the car and produced the crack cocaine shortly into the traffic stop.
 {¶ 22} Appellant further argues, however, that the deputies did not have cause to convert this traffic stop into a more intrusive investigatory seizure because, while they did observe some nervous movements on the part of appellant and the driver, the deputies did not learn of any specific, articulable facts that would justify a greater intrusion. We disagree.
 {¶ 23} In order for the detention or seizure of a vehicle to be valid or legal under the Fourth Amendment, it must be reasonable under the circumstances. Whren v. United States (1996) 517 U.S. 806, 810. In order to determine its reasonableness, the seizure or detention must, at the very least, be based on "specific and articulable facts." State v.Bevan, 80 Ohio App.3d 126, 129, citing Terry v. Ohio (1968),392 U.S. 1. When a police officer's "objective justification to continue detention of a person stopped for a traffic violation" is not related to the purpose of the stop, the continued detention must be based on "articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention." Robinette III,80 Ohio St.3d 234, paragraph one of the syllabus. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." United States v.Cortez (1981), 449 U.S. 411, 417.
 {¶ 24} In evaluating the propriety of the stop, a reviewing court must consider the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold". State v. Andrews
(1991), 57 Ohio St.3d 86, 87-88. See also State v. Freeman (1980),64 Ohio St.2d 291. The standard for reviewing police conduct is an objective one: "would the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, at 21-22 citingCarroll v. United States (1925) 267 U.S. 132.
 {¶ 25} In this case, appellant's vehicle was stopped and detained due to a reasonable articulable suspicion that the occupants were engaged in criminal activity. See Terry at 21 (investigatory stop warranted if officer involved is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion"). Specifically, the trial court found that appellant's vehicle went left-of-center. Additionally, the deputies received information that the occupants were transporting drugs and Major Englund observed the occupants making furtive movements and conveyed this information to Deputy Spencer.
 {¶ 26} Appellant, however, argues that the informant's information cannot form a basis of reasonable articulable suspicion because the information was unreliable and unsubstantiated. We disagree. In the case of a citizen-informer who is victimized or merely witnesses a crime and reports it out of a sense of civic duty, the police may be entitled to presume that the informer is reliable. State v. Shepherd (1997),122 Ohio App.3d 358, 366, citing Toledo v. Elkin (1994),68 Ohio Misc.2d 59; United States v. Harris (1971), 406 U.S. 573; Statev. Gaston (1996), 110 Ohio App.3d 835, 837. Additionally, a citizen-informer's information may be relied upon if the totality of the circumstances demonstrates that he is reliable or his information concerning criminal conduct was corroborated through independent police work. Shepherd at 366. See, also, Alabama v. White (1990), 496 U.S. 325
(holding an anonymous telephone tip received by a police officer that a person possessed cocaine, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion for the police to make an investigatory stop of the person's automobile).
 {¶ 27} In the case at bar, no information was presented regarding the informant's motivation or reason for providing information to the deputies. We, however, do know that the informant volunteered this information, did not have outstanding warrants for his arrest, and was not "pointing the finger" at appellant for a crime in which he was implicated. Moreover, we note that the informant's information was corroborated through independent police investigation when: (a) Wagner ran a check through LEADS and found that appellant owned a vehicle that matched the informant's description of the vehicle; (b) Englund drove past appellant's residence, and found the vehicle was not there; (c) appellant returned from Cleveland at approximately the time the informant indicated; and (d) appellant traveled the route the informant described.
 {¶ 28} As such, although we agree with the trial court that the informant's information was not sufficient to establish probable cause for a search or arrest, we find that the officers were justified in relying on the informant's information when formulating their suspicion that the occupants of the vehicle were engaged in criminal activity. We further find that, once the vehicle was stopped, the informant's information, coupled with the occupants furtive movements, were sufficient to establish that a continuation of the detention was warranted.
 {¶ 29} Nevertheless, appellant argues that the scope of the traffic stop was exceeded in this case "due to the extremely intrusive and overbearing methods used by the deputies." In particular, appellant contends that the traffic stop was overly intrusive because: (1) appellant was asked to step out of the car despite never being threatening, argumentative, or belligerent; (2) appellant was told to place her hands on the hood of the car; (3) there were three officers on the scene and only two occupants in the automobile; and (4) appellant was prematurely mirandized, falsely indicating to appellant that she was under arrest. Appellant recognizes that the number of deputies at the scene and the removal of the occupant from the car would not render the seizure unreasonable, without more, but asserts that these facts are "part of a course of police conduct that was unduly heavy-handed and intimidating from the start, and which become progressively more so."
 {¶ 30} With respect to Deputy Spencer's investigation of appellant, we note that under certain circumstances, an officer may, in an appropriate manner, approach a person for purposes of investigating criminal behavior even though there is no probable cause to make an arrest." State v.Williams, 51 Ohio St.3d 58, 60, citing Terry, 392 U.S. at 22. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response." Id., citing Terry at 23.
 {¶ 31} We find that Spencer's removal of appellant from the vehicle, and request that she place her hands on the hood, were justified under the totality of the circumstances. We initially note that an officer can order a driver and the passengers out `of the car as a precautionary measure, regardless of whether he had any reason to believe that they were armed and dangerous. State v. Lozada (2001), 92 Ohio St.3d 74, 81
citing Maryland v. Wilson (1997), 519 U.S. 408. See, also, Pennsylvaniav. Mimms (1977) 434 U.S. 106 (holding an officer may order a motorist out of a vehicle that has been lawfully stopped for a traffic violation, even in the absence of any criminal wrongdoing). However, where there exists a reasonable belief that the individual whose suspicious behavior an officer is investigating at close range is armed and presently dangerous to the officer or to others, it is "clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Michigan v. Long (1983), 463 U.S. 1032, 1047, citingTerry at 24. Moreover, "the law does not require that an officer wait until the point of peril to take protective action. It is sufficient that he has a reasonable basis to believe that his safety requires a search or seizure." State v. Smith (1978), 56 Ohio St.2d 405, 409.
 {¶ 32} In this case, appellant argues that Spencer's fear for his safety was unwarranted, insofar as appellant was not threatening, argumentative, or belligerent, there was no basis to believe she was armed, and because there were three officers on the scene. We disagree.
 {¶ 33} The occupants of the vehicle were suspected of transporting drugs. It is well-established that persons who are suspected of engaging in drug trafficking often are armed and dangerous. State v. Evans
(1993), 67 Ohio St.3d 405, 413. Additionally, Major Englund observed appellant and the driver make furtive movements before approaching the car and relayed this information to Spencer. Spencer also testified that, when he approached the passenger door of the car, he observed appellant placing her hands under her leg and down the side of the seat closest to the passenger door. Repeatedly, Spencer told appellant to stop this behavior, but she continued. Appellant argues that she had a medical condition that caused her to twitch and that she told Spencer such. We find, however, that based on the events as they were unfolding, Spencer was justified in his suspicions. In State v. Severino (May 19, 2000), 11th Dist. No. 99-L-052, the court held that an occupant's furtive movement in an automobile provided an objective basis for the belief that he may have had a weapon. Accordingly, under the circumstances, we find that there was an objective basis for Spencer's belief that appellant may have had a weapon. Therefore, we find that it was not necessary for appellant to be threatening, argumentative, or belligerent, before Spencer could ask her to step out of the vehicle and place her hands on the hood.
 {¶ 34} Moreover, with respect to Spencer's fear for his safety, and the safety of others, we find that the state must show the existence of circumstances that would cause a reasonable person to believe that his safety was in danger. Terry at 27. The reasonableness of an officer's suspicions depends on the totality of the circumstances. State v. Bobo
(1988), 37 Ohio St.3d 177, paragraph two of the syllabus; United Statesv. Cortez (1981), 449 U.S. 411, 417. Again, the information Spencer possessed regarding the scene was that the occupants were suspected of transporting drugs and that the driver and the passenger were making furtive movements. Under these circumstances, we find that Spencer's fear for his safety was reasonable, and that it was not unduly heavy-handed or unreasonable for Spencer to neutralize the threat of physical harm by asking appellant to get out of the vehicle and place her hands on the hood.[1]
 {¶ 35} We further find that the number of officers on the scene was not unduly overbearing. Deputy Spencer testified that it was normal procedure for an officer patrolling in the general area of a traffic stop to assist the unit who initiated the stop. Spencer further testified that he was instructed by his supervisor to patrol in the area of the anticipated stop. The testimony suggests that the number of officers present on the scene of this stop was directly related to the information supplied by the informant. Under the totality of the circumstances, particularly the fact that the officers' possessed a reasonable articulable suspicion that the occupants were transporting drugs from Cleveland, we find that the presence of three officers on the scene was reasonable.
 {¶ 36} Appellant next argues that she was prematurely read herMiranda rights, which led her to believe that she was under arrest. By its terms, Miranda applies whenever "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."Miranda v. Arizona (1966), 384 U.S. 436, 444 (emphasis added). In UnitedStates v. Mendenhall 1980), 446 U.S. 544, 554, the court explained: "a person has been `seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."
 {¶ 37} A number of factors led to Spencer's issuance of the warnings: (a) his supervisor and another deputy were mirandizing the driver at the back of the car; (b) he knew the occupants of the stopped vehicle were suspected of transporting narcotics, but he was "not [a] hundred percent sure what she had going on;" and (c) he temporarily deprived appellant of her "freedom of action" by asking her to place her hands on the hood of the car. We find that, under the circumstances, it was not unreasonable, overly intrusive, intimidating or overbearing, for Deputy Spencer to read appellant her rights. To the contrary, we find the issuance of Miranda
warnings to be prudent under the circumstances of this case. In fact, the transcript reveals that appellant understood her rights and invoked her right to remain silent when she told Deputy Spencer: "I'm not saying nothing."
 {¶ 38} Finally, appellant argues that Spencer's inquiry regarding the contents of her pockets was unreasonable, overly intrusive, intimidating, and exceeded the scope of the stop. We again disagree.
 {¶ 39} In addition to permitting a stop when articulable suspicion exists, Terry approves the use of a frisk or pat down by the police in certain situations. "The rationale behind allowing frisks is to permit the officer to take reasonable precautions for his own safety consistent with the detainee's fourth amendment interests." United States v. Smith
(C.A. 6, 1978), 574 F.2d 882, 885. The scope of a pat down is limited to a narrow protective search of a detainee's person for concealed weapons.Evans, 67 Ohio St.3d at 408. In Terry, the court outlined the standard for a pat down "frisk" in this way: "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless if he has probable cause to arrest the individual for a crime." Terry, 392 U.S. at 27. Such frisks, which are limited searches of the person, do not require probable cause, but a reasonable suspicion that the person stopped is armed.
 {¶ 40} As we have already held, Spencer possessed a reasonable articulable suspicion that appellant was engaged in criminal activity and may be armed and dangerous. Under these circumstances, we find that Spencer could have physically patted appellant down, pursuant to Terry, to determine whether appellant was armed. Spencer testified that he chose not to pat down appellant because there were no female officers on the scene. Instead, when appellant removed her hand from the hood and placed it in her pocket, Spencer merely asked her if there was anything in her pockets that he "need[ed] to be concerned with."[2]
 {¶ 41} The trial court held that Spencer's inquiry did not fall within the realm of Terry because no physical pat down frisk occurred. We, however, find that, insofar as Spencer could have physically patted appellant down pursuant to Terry, Spencer's verbal request regarding the presence of dangerous items in appellant's pockets was the least intrusive means by which Spencer could neutralize the potential threat that appellant posed after placing her hand in her pocket. We therefore disagree with the trial court that because he did not touch appellant, Spencer's verbal inquiry regarding the contents of her pockets was not justified pursuant to Terry. See State v. Ruiz (Fla.App. 1988),526 So.2d 170 (court noted that "[t]o hold that, that while a policeman * * * may `frisk' a suspect for weapons he may not simultaneously ask him whether he is armed, would be an unrealistic and unreasonable extension of the Miranda rule.")
 {¶ 42} Accordingly, we find that the scope of appellant's detention, seizure, and/or search was justified and reasonable under the totality of the circumstances, was not overly intrusive or overbearing, and did not exceed the scope of the stop. We therefore find that appellant's Fourth Amendment rights were not violated by Spencer's actions.
C. Voluntary Surrender of Crack Cocaine.
 {¶ 43} Appellant further argues that the contraband was not voluntarily surrendered because she was required to empty her pockets. We note, however, that the trial court did not find credible appellant's testimony that Spencer asked her to empty her pockets. Rather, as we held above, Spencer was justified, in order to protect his personal safety, in asking appellant if she had anything on her person he should be "concerned with." As such, Spencer's inquiry of appellant was not unlawful.
 {¶ 44} Moreover, we find that appellant's production of the crack cocaine was voluntary. Appellant was apprised of her rights and asserted her right to remain silent. In spite of knowing her rights, appellant turned out her pockets to Spencer, thereby exposing the crack cocaine.
 {¶ 45} Nevertheless, appellant argues that the reading of her Miranda
rights was actually the reason appellant's production of the contents of her pockets was not voluntary. Appellant argues that she "was falsely given the impression that she was under arrest" and that she "no doubt believed that she would be searched, that the cocaine would be found, and that she could not refuse to cooperate." Appellant asserts that the facts in this case are "strikingly similar" to those in Florida v. Royer
(1983), 460 U.S. 491. In particular, appellant argues that, like the appellant in Royer, she "was subjected to a series of police tactics that led her to reasonably believe that she was in custody." Akin to Royer,
only after appellant surrendered the drugs was there probable cause to arrest appellant. Appellant argues:
 {¶ 46} "Indeed, the deputies had no articulable facts that would justify them in exceeding the scope (i.e.: the normal degree or level of intrusiveness) of a normal traffic stop. At least as to her, the stop was an unreasonable seizure. Just as Mr. Royer's `consent' was the product of an illegal seizure, so was the surrender of the drugs in this case. Just as Mr. Royer's consent was not freely and voluntarily given, [appellant's] actions were not voluntary, under the circumstances."
 {¶ 47} Contrary to appellant's arguments, we find that the facts inRoyer are distinguishable from the present case. Royer concerned an investigatory stop of a passenger in an airport who fit the profile of a drug courier. The court held that the detectives lacked reasonable articulable suspicion of criminal activity to warrant the passenger's continued detention and removal to an investigation room. As such, the court held that Royer's "consent" to open his seized suitcases was not voluntarily given because it was "tainted" by the illegal detention.
 {¶ 48} In this case, however, we find that, unlike the situation inRoyer, Spencer's detention of appellant was not illegal and that she was not detained beyond the manner permitted by Terry. Even assuming appellant believed herself to be under arrest, as discussed above, under the totality of the circumstances, as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold," Andrews, 57 Ohio St.3d at 87-88, we find that every action taken by Spencer was based upon a reasonable articulable suspicion that appellant was engaged in criminal activity and was potentially dangerous.
 {¶ 49} Furthermore, we find that the reading of her Miranda rights did not elevate this lawful investigatory stop and "frisk" into an unlawful detention. To the contrary, appellant was advised of her rights and should have heeded them. Accordingly, we find that appellant was not unlawfully detained, her production of the crack was not involuntary, and, as such, appellant's reliance on Royer is misplaced.
D. Conclusion.
 {¶ 50} Based on the foregoing, we find that the trial court did not err in denying appellant's motion to suppress. We find that the crack cocaine seized from appellant was properly admitted in evidence against her for the following reasons: (1) the traffic stop was justified because Major Englund had a reasonable articulable suspicion that an offense had occurred; (2) under the totality of the circumstances, the officers conducted their investigative stop in a reasonable manner; (3) at the time he seized appellant, Deputy Spencer had reasonable and articulable grounds to believe that appellant was armed and dangerous and, for the protection of himself and others, it was necessary for him to take reasonable measures to neutralize the threat of harm; and (4) appellant's impression that she was under arrest during the investigatory stop does not quash the fact that she voluntarily surrendered the contents of her pocket.
 {¶ 51} On consideration whereof, this court finds that substantial justice has been done the party complaining and the judgment of the Huron County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs are assessed to appellant.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Parish, J. Concur.
Arlene Singer, P.J., dissents.
[1] Appellant asserts that the number of officers on the scene should have alleviated any fear for their safety; however, we find such an argument to be entirely baseless. Sheer numbers of officers would not eliminate the risk of one of them being shot in such a situation.
[2] Appellant argues that Spencer asked her to empty her pockets; however, we find that the trial court found Spencer's testimony to be more credible than appellant's and, therefore, defer to the finding of the trial court on this issue. See Brown, 151 Ohio St.3d 51, supra.