JOURNAL ENTRY AND OPINION
{¶ 1} This appeal raises the question whether the police officer satisfied the standard set forth under Terry v.Ohio[1] when he conducted the search of the appellant Gino Stewart. Stewart appeals the trial court's decision denying his motion to suppress and assigns the following error for our review:
"I. The trial court erred when it failed to suppress theevidence taken from Mr. Stewart in violation of his FourthAmendment Right to be free from unreasonable searches andseizures."
 {¶ 2} Having reviewed the record and pertinent law, we reverse the trial court's decision and hold as a matter of law that once a person has exited a vehicle, the police officer may not intrude further on his person unless the police officer has a particularized suspicion under the Terry v. Ohio standard. The apposite facts follow.
 {¶ 3} Brecksville Police Officer Stanton Karinek stopped a vehicle for an expired license tag. Upon approaching the vehicle, he observed Gino Stewart without his seatbelt fastened. Stewart occupied the front passenger seat. Officer Karinek asked Stewart for his identification. Stewart informed him that he did not have a driver's license, but provided Officer Karinek with his full name, date of birth, and social security number. The officer returned to his car and obtained a computer photograph of Stewart. The officer was not convinced that the computer photograph matched Stewart, so he ordered him out of the car.
 {¶ 4} The officer asked Stewart about a prior drug arrest, which the computer search had revealed. Stewart responded that the arrest involved his brother. While the officer concerned himself with Stewart, the driver and the backseat passenger remained in the car. The officer continued his conversation with Stewart and eventually the officer stated that Stewart's waving his hands in front and in back was making him nervous. A video tape of the stop revealed that Stewart's movements equated to nervous gestures one makes while standing for a period of time.
 {¶ 5} The officer conducted a pat-down search of Stewart's rear waistband and pockets, but did not detect anything. Stewart attempted to walk away; however, the officer told him he was not finished. The officer then patted down Stewart's front waistband and pockets. As he felt the outside of Stewart's left pocket, he felt a rock-like object that he immediately recognized as a rock of crack cocaine. He asked Stewart what the object was, to see what Stewart would say. However, Stewart did not respond. The officer then retrieved two rocks of cocaine from Stewart's pocket.
 {¶ 6} As the officer patted down Stewart prior to placing him in the back of the squad car, he retrieved a pistol in Stewart's right-side waistband. The officer contended he did not feel it during his first search, because he did not pat down Stewart's side waistbands.
 {¶ 7} Along with the testimony of the officer, a video tape depicting the officer's stop of the vehicle and search of Stewart was entered into evidence.
 {¶ 8} The trial court denied the motion to suppress, stating on the record:
"Considering the totality of the circumstances, the fact thatthe defendant had no identification, his hand movements when hewas out of the car, the clothing could easily have beenconcealing contraband and for the purposes of the officer'ssafety, weapons and the fact that 2003 drug arrests in the Cityof Cleveland, I do believe that based on the totality ofcircumstances, the officer was justified. So I will deny yourmotion to suppress."[2]
 {¶ 9} Thereafter, Stewart entered a plea of no contest to all of the charges. The trial court sentenced Stewart to a total term of two years in prison.
 Motion to Suppress {¶ 10} In his sole assigned error, Stewart contends the trial court erred in denying his motion to suppress.
 {¶ 11} In determining whether to grant a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses.[3] On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence.[4] After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met.[5]
 {¶ 12} The historical case law established by the United States Supreme Court and adopted in this jurisdiction determines that a driver as well as a passenger may be ordered from the vehicle while the officer issues a traffic summons.[6]
 {¶ 13} The issue in this case is not whether the officer could order Stewart out of the car, but whether he could search Stewart upon his exit from the vehicle. When the suspect exits the vehicle, the officer must have an articulable particularized suspicion that the suspect is dangerous or concealing contraband in order to conduct a pat-down search. The officer is not allowed to search for evidence merely because the person has a prior arrest record.
 {¶ 14} Consequently, the concern is whether the officer had any basis for further intrusion once Stewart was out of the car. The officer testified that he could not verify whether Stewart was who he said he was. However, once Stewart presented the officer with his identification information, the officer's inability to verify whether Stewart resembled the computer photograph was irrelevant. After all, Stewart was not under arrest and could not be arrested for the seatbelt violation, which is a minor misdemeanor.
 {¶ 15} Terry v. Ohio[7] requires more than a mere suspicion before a pat-down search is conducted. It requires a particularized suspicion that the suspect is dangerous or has contraband. In Mimms, supra, the court noted that the particularized suspicion occurred when the officer observed under Mimms' pocket a large bulge, which caused the officer to frisk him and discover the weapon.
 {¶ 16} Here, when the officer ordered Stewart to exit the car, the officer did articulate a particularized suspicion that Stewart was armed or dangerous. He stated only that Stewart made him nervous by swinging his arms while being questioned. We readTerry v. Ohio as requiring an objective, articulable fact that can be particularized. For example, furtive movement or gesture of some sort. We refuse to conclude that swinging one's arms in a nervous fashion constitutes a furtive movement.
 {¶ 17} Also, it is troubling to this court that the officer's intrusion extended beyond obtaining a proper identification of Stewart. Before he was ordered out of the vehicle, Stewart gave the officer his name, date of birth, and social security number. This information allowed the officer to verify that Gino Stewart existed and the officer had his name, date of birth, and social security number. In fact, the computer search based on this information also provided a photograph of a man, who according to the officer, looked "very similar" to the passenger. After obtaining this verification, the officer ceased to have an objective reasonable basis for further detaining Stewart to determine his identity.
 {¶ 18} The court in State v. Ellison[8] and State v.DiGiorgio[9] held that regardless of the officer's subjective doubts, computer verification of name, address, and social security number constitutes sufficient proof of identity. The court in DiGiorgio explained: "While an imposter might, with relative ease, be able to furnish the name and address of the person whose identity he assumes, it is less likely that he will be able to furnish that person's social security number. * * * We believe that possibility to be so remote as to render objectively unreasonable [the officer's] rejection of the information provided."[10] Here the case is even more compelling because the officer admitted that the photo he obtained as a result of the computer search looked "very similar" to the individual in the car.
 {¶ 19} In conclusion, it is axiomatic that an officer may remove a driver and/or a passenger from a vehicle pursuant to a valid traffic stop under Mimms-Maryland. Once the officer has received from an individual his name, address, date of birth, and social security number, and the suspected violation is a non-arrestable misdemeanor, any further detention or intrusion by the officer must be satisfied under Terry v. Ohio's
particularized suspicion standard. Here, the officer failed to present any evidence or information that established the Terryv. Ohio particularized suspicion standard.
 {¶ 20} Accordingly, we reverse this matter.
Judgment reversed.
It is ordered that appellant recover of appellee his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, P.J., and McMonagle, J., concur.
[1] (1968), 392 U.S. 1., 88 S.Ct. 1868, 20 L.Ed.2d 889.
[2] Transcript at 59-60.
[3] State v. Mills (1992), 62 Ohio St.3d 357, 366.
[4] State v. Retherford (1994), 93 Ohio App.3d 586, 592.
[5] Id.
[6] See, Pennsylvania v. Mimms (1977), 434 U.S. 106,98 S.Ct. 330, 54 L.Ed.2d 331; Maryland v. Wilson (1997), 519 U.S. 408,117 S.Ct. 882, 137 L.Ed.2d 41. See also, State v. Williams
(1994), 94 Ohio App.3d 538, 544-545; State v. Clark, Cuyahoga App. No. 83480, 2005-Ohio-1160.
[7] Supra.
[8] (2002), 148 Ohio App.3d 270.
[9] (1996), 117 Ohio App.3d 67.
[10] Id. at 70.