JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Hiram Smith appeals his conviction and sentence for drug possession, a fifth degree felony, and assigns the following error for our review:
 "The trial court committed prejudicial error by denying appellant's motion to suppress."
 {¶ 2} Having reviewed the record and pertinent law, we reverse the trial court's decision and vacate Smith's conviction and sentence.
 {¶ 3} Hiram Smith moved to suppress the crack pipe, which was the subject of his drug possession charge. After a hearing, the trial court denied the motion and Smith entered a no contest plea to the charge. The trial court, thereafter, sentenced him to a one-year community control sanction. Smith timely appealed his conviction and sentence.
 Facts From The Suppression Hearing {¶ 4} The manager of the CMHA Ansel Road high rise apartment informed CMHA police officers that an occupant of apartment 1631 is unauthorized and not legally on the premises. The officers and K-9 dog Repo entered that apartment and found a female. While questioning her and running a warrant check on her, a male and a female arrived at the apartment door. Smith was walking behind the female. Once at the door, Smith and the female immediately turned and walked away. There is some confusion as to whether they actually entered the apartment or not. One of the officers was certain that the female walked into the apartment. In describing the individuals' actions, Officer Saleem Ali testified that "they went to walk *Page 3 
away and all we did was bring them back to check them to verify if they are authorized persons to be on CMHA property."[1]
 {¶ 5} Once in the apartment, the officers checked Smith's identification and learned that he was a resident of the building. They continued to detain Smith while they ran warrant checks on both the female and Smith. It was during the warrant check that Smith started fidgeting and putting his hand into his pocket.
 {¶ 6} Officer Jose Alcantara stated "while the wants and warrants check was requested, the male standing by the window kept fidgeting and reaching in his right pants pocket. He was advised several times to stop reaching to his right pants pockets. Wants and warrants check came back having the female cleared. The male, Hiram Smith, was still reaching into his pocket. That led us to believe that he was either concealing a weapon or due to [our] prior experiences or illegal narcotics on his person."[2] Although Officer Alcantara did not say whether Smith was cleared of the warrant check, his partner stated that no warrant came back for Smith's arrest. On cross-examination, Officer Ali could not remember whether the warrant check was completed before or after the pat-down search of Smith. He was sure that Smith did establish his residency before the pat-down search. *Page 4 
 {¶ 7} Neither officer gave any reason for detaining Smith after he had presented evidence of his right to be in the building; nor did they offer any facts to justify detaining Smith while they conducted a warrant check on him. However, they both maintained that at all times before the fidgeting episode, Smith was free to leave. Although the record does not establish that this was conveyed to Smith.
 {¶ 8} Our standard of review is de novo.[3] In adhering to this standard of review, our concern is whether the facts in this case comply with the legal standard of Terry v. Ohio[4] Under Terry, both the stop and seizure must be supported by a reasonable suspicion of criminal activity. Consequently, the state must point to specific and articulable facts that reasonably suggest criminal activity. Inarticulable hunches, general suspicion, or no evidence to support the stop and frisk is insufficient as a matter of law. Additionally, when an officer uses a show of authority and commands a person to adhere to an order to stop, the command to stop constitutes a Fourth Amendment seizure underTerry.
 {¶ 9} Here, the officers stated that they were investigating an unauthorized occupant of apartment 1631 and that they stopped Smith after he turned to walk away from the apartment that they were investigating. They averred that the encounter was to further their investigation for unauthorized occupant of that apartment. Consequently, a limited detention to ascertain Smith's identity and *Page 5 
residency status was proper under Terry. However, the continued detention was unreasonable. In order to detain him to run a warrant check, the officers needed a reasonable suspicion that he was wanted for a crime.[5] Therefore, any evidence seized after an illegal seizure of a person is inadmissible as a matter of law.
 {¶ 10} In Bermundez,[6] this court affirmed a trial court's order suppressing evidence, which was seized after an officer detained a person to run a warrant check. The state appealed and this court held that to detain a person to run a warrant check, the officer must comply with Terry, citing State v. Barrow[7] and State v. McDowell[8]
 {¶ 11} The facts in Bermundez established that the officers stopped Bermundez to investigate why she and a male were standing on a corner for almost 45 minutes. The police believed the male was intoxicated. They checked the male for outstanding warrants. In the interim, Bermundez was detained for thirty minutes while the officers ran a warrant check on her. Bermundez was simply on the street *Page 6 
corner talking to the male. We held the officer failed to articulate a justification for the intrusion. Bermundez cited Barrow, a case decided by this court in 1987.
 {¶ 12} In Barrow, two officers observed the defendant and another man leaning in the open doors of a car with a back window that had been smashed. Suspecting that the car had been stolen, the officers then ran warrant checks on the men. This court stated that "the initial stop was proper but the officer that ran the warrant check said he had no reason to hold them and they had committed no crime in his presence but they were not free to go. The officers failed to tell the trial court the articulable and reasonable suspicion which justified the further detention."[9]
 {¶ 13} Bermundez also cited McDowell. In McDowell, "the officer believed that a wanted drug dealer was in a certain car. The officer wanted to stop the car to execute a bench warrant. The car stopped at a convenience store, and the officer realized the dealer was not in the car. Nevertheless, the officer got out and told the driver and the passenger to remain in the car while he checked for outstanding warrants." The court determined that "once Sgt. Bammann determined the passenger in the Cadillac was not the drug dealer, he had no reasonable, articulable facts or suspicion of criminal activity to justify appellant's continued detention. * * * By detaining appellant after it was determined he was not the drug dealer, the scope *Page 7 
and duration of the investigatory stop lasted longer than was necessary `to effectuate the purpose for which the initial stop was made.'"[10]
 {¶ 14} Recently, in State v. Stewart,[11] this court again held that in order to detain a person for a warrant check, the officer must articulate a reason for the detention of a person who is otherwise free to leave.
 {¶ 15} We appreciate that there exists minor differences in all of these cases. However, they each have one thing in common, theTerry standard. Under Terry, an officer must articulate a reasonable basis for detaining an individual.
 {¶ 16} We are mindful that it could be argued that because Smith was free to leave, no seizure occurred. We are not persuaded that Smith was free to leave, although each officer stressed that fact in their testimony. The officers cannot have it both ways. They cannot order Smith to remain in the apartment and then later maintain that Smith was free to leave.
 {¶ 17} Once the officers "brought" Smith into the apartment and continued to hold him there, this show of authority constituted a seizure. Under Terry, in order for the officers to detain Smith for a warrant check, they needed an articulable reasonable suspicion to run the warrant check. Accordingly, we reverse the trial court's decision and vacate Smith's conviction. *Page 8 
 {¶ 18} Judgment is reversed and conviction is vacated.
 It is, therefore, considered that said appellant recover of said appellee his costs herein.
 It is ordered that a special mandate be sent to said court to carry this judgment into execution.
 A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Tr. 14.
[2] Tr. 30.
[3] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372.
[4] (1968), 392 U.S. 1.
[5] State v. Bermundez, Cuyahoga App. No. 88243, 2007-Ohio-2115;State v. Stewart, Cuyahoga App. No. 87237, 2006-Ohio-5934; and State v.Barrow (Dec. 17, 1987), Cuyahoga App. No. 53140.
[6] Supra.
[7] Supra.
[8] (Oct. 6, 2000), 5th Dist. No. 99COA01328.
[9] Bermundez at 4, citing Barrow at 5, citing State v. Chatton
(1984), 11 Ohio St.3d 59, 63.
[10] Bermundez, citing McDowell, quoting State v. Bevan (1992),80 Ohio App.3d 126, 129.
[11] Supra.
KENNETH A. ROCCO, J., CONCURS; COLLEEN CONWAY COONEY, P.J., DISSENTS. (SEE ATTACHED DISSENTING OPINION.)