JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, the state of Ohio, appeals, pursuant to Crim. R. 12(K), from an order of the Cuyahoga County Court of Common Pleas granting defendant-appellee, Tyree Acy's, motion to suppress evidence obtained from a warrantless search of his person and vehicle. After reviewing the facts of the case and pertinent law, we affirm.
 {¶ 2} The record, developed at the suppression hearing, reveals that on June 16, 2007, Sergeant Nestor Rivera of the Cuyahoga County Sheriffs Department was on patrol with three other patrol units from the sheriffs department and three units from the East Cleveland Police Department. Rivera stated his purpose was to assist East Cleveland police investigating complaints of drug activity in the area of Melbourne, Superior, and Carlyon Avenues.
 {¶ 3} Rivera testified that at approximately 1:30 a.m., he was driving eastbound on Superior and observed four males standing on the corner of Melbourne and Superior. He stated that he did not observe any indication of criminal activity, but decided "to approach these males to see what they are doing, why are they standing on the corner. Okay. It's 1:30 in the morning." Rivera stopped his car and activated the overhead lights, which he stated was his policy when he is "impeding the flow of oncoming traffic" or "upon an investigative stop." The other sheriffs department and East Cleveland units also *Page 4 
stopped and activated their lights. Rivera said he and five other sheriffs officers got out and approached the men, who by this time had walked away from the corner.
 {¶ 4} Rivera testified that the appellee and one of the other men were about to enter a car when he stopped them by calling out, "Hey, sheriffs department." He went up to the men and asked them if they had any drugs, weapons, or contraband on them. Rivera testified that appellee said, "I got some marijuana on me and $800 from my business."
 {¶ 5} Rivera then walked the men across the street to the sheriffs car where they were told to put their hands on the back of the car and were subjected to a pat-down search. After a deputy found some marijuana in appellee's pocket, Rivera asked him if there was anything in his car. Rivera testified that appellee told him there was a "little bit of weed" under the driver's seat. Rivera stated that he asked appellee, "Can I search your vehicle? Can I get it?" and appellee replied, "Yeah, go ahead. That's all you're going to find."
 {¶ 6} Rivera testified that he then had a canine unit come over and search the inside of appellee's car as part of a live training exercise. After the dog alerted to drugs in a black bag, Rivera asked appellee, "Can I search it?" According to Rivera, appellee said, "Yeah, go ahead." The black bag contained 13 individual bags of marijuana. After finding the marijuana in the car, Rivera *Page 5 
placed appellee in the back of the sheriffs car and read him theMiranda warnings.
 {¶ 7} On September 27, 2007, a Cuyahoga County Grand Jury indicted appellee on two counts of drug trafficking in violation of R.C. 2925.03
and one count of possession of criminal tools in violation of R.C. 2923.24. On February 5, 2008, appellee filed a motion to suppress evidence based on an illegal stop and warrantless search.
 {¶ 8} On March 6, 2008, the trial court held a hearing on appellee's motion to suppress. After listening to Sergeant Rivera's testimony and the arguments of counsel, the trial court granted appellee's motion to suppress and ordered all evidence obtained excluded. The court found that Rivera failed to identify specific and articulable facts to warrant the initial stop of appellee. At the state's request, the court also considered the issue of consent. The court found that the state's evidence failed to establish that appellee had consented to any search.
 {¶ 9} The state appealed raising two assignments of error for review as follows.
 {¶ 10} "I. The trial court erred when it ruled that the appellee was stopped at the time the police initially approached him and asked him questions."
 {¶ 11} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them, per se, unreasonable unless an exception applies. Katz v. United States (1967),389 U.S. 347. An *Page 6 
investigative stop, or Terry stop, is a common exception to theFourth Amendment warrant requirement. Terry v. Ohio (1968), 392 U.S. 1. UnderTerry both the stop and seizure must be supported by a reasonable suspicion of criminal activity. The state must be able to point to specific and articulable facts that reasonably suggest criminal activity. Inarticulable hunches, general suspicion, or no evidence to support the stop and frisk is insufficient as a matter of law. State v.Smith, Cuyahoga App. No. 89432, 2008-Ohio-2361.
 {¶ 12} We find no evidence in the record to justify the stop and frisk in this case. Rivera testified that he did not see any hand-to-hand transaction. He did not see any suspicious behavior. He saw nothing that indicated appellee was involved in criminal activity. Rivera stated, "The only thing I observed was males standing on a corner, which in my experience would indicate that they are probably loitering." Rivera testified that he stopped the men because of complaints of drug activity in the area. However, this court has held in the past: "A person's mere presence in an area of high crime activity does not suspend the protections of the Fourth and Fourteenth Amendments to the United States Constitution." State v. Chandler (1989), 54 Ohio App.3d 92, paragraph two of the syllabus.
 {¶ 13} The state argues that it did not stop and detain appellee. The state asserts that Sergeant Rivera simply walked up to appellee and engaged him in conversation during which appellee admitted to having illegal drugs in his *Page 7 
possession. It asserts that this was the prototypical consensual encounter; no seizure occurred; and, appellee's Fourth Amendment rights were not violated. We are not persuaded.
 {¶ 14} A consensual encounter is one where the police approach a person in a public place, engage the person in conversation, request information, and the person is free to not answer and to walk away.United States v. Mendenhall (1980), 446 U.S. 544, 554. A person is "seized," however, so as to trigger Fourth Amendment protection, when, by means of physical force or a show of authority, his freedom of movement is restrained. Id.; Terry, 392 U.S. at 16, 19.
 {¶ 15} The test for determining whether a person has been seized, is whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."Mendenhall, at 554. "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id.
 {¶ 16} After considering the totality of the circumstances, including the overwhelming number of units and officers involved, the fact that the police had no reasonable suspicion that appellee had been, or was about to be, involved in criminal activity, and the fact that appellee was preparing to leave until stopped *Page 8 
by shouts from the sheriffs officer, we find that there was a sufficient show of force or authority such that appellee, or any reasonable person, would not believe that he was free to get in his car and drive away. Accordingly, the trial court did not err in finding that appellee was unlawfully stopped and seized by the police prior to being questioned.
 {¶ 17} The first assignment of error is overruled.
 {¶ 18} "II. The trial court erred when it ruled that the deputy's failure to Mirandize the defendant when the deputy approached appellee and asked if he had any weapons or contraband invalidated any consent and rendered suppressible any evidence recovered via information from the questioning."
 {¶ 19} In our review of the first assignment of error, we determined that appellee was unlawfully seized by officers of the sheriffs department as he was about to get into his car. "[A]ny evidence seized after an illegal seizure of a person is inadmissible as a matter of law." State v. Smith, supra.
 {¶ 20} The state asserts that even if appellee was illegally detained, an illegal detention will not invalidate a subsequent voluntary consent to search. The state argues that the record demonstrates that appellee voluntarily consented to the search of his person and vehicle.
 {¶ 21} "Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable *Page 9 
person would believe that he or she had the freedom to refuse to answer further questions and in fact could leave." State v. Robinette, 80 Ohio St.3d 234,1997-Ohio-343, at paragraph 3 of the syllabus. The test underRobinette is whether a person consents as a voluntary act of free will or merely submits to "a claim of lawful authority."
 {¶ 22} The state bears the burden of proving by clear and convincing evidence that the appellee's consent was "freely and voluntarily given."Florida v. Royer (1983), 460 U.S. 491, 497. "The question of whether a consent to a search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." Schneckloth v. Bustamonte
(1973), 412 U.S. 218, 227.
 {¶ 23} At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact. State v.Fanning (1982), 1 Ohio St.3d 19, 20. Since the question of whether appellee's consent was voluntarily given requires an assessment of the credibility of the evidence, the trier of fact is in the better position to make this determination. The trial court found that the state's evidence failed to establish voluntary consent. After reviewing the record, we cannot find that the trial court's determination was clearly erroneous. While Rivera's questioning was not expressly coercive, the circumstances surrounding the request to search made the questioning impliedly coercive. A reasonable person in appellee's position would not feel that he could *Page 10 
refuse to submit to Rivera's questioning and was free to leave. From the totality of the circumstances, it appears that the trial court found that the appellee merely submitted to "a claim of lawful authority" rather than consenting as a voluntary act of free will. UnderRobinette, this is not sufficient to prove voluntary compliance.
 {¶ 24} The trial court granted the motion to suppress finding that the testimony failed to established that there were specific and articulable facts to warrant the initial stop of this appellee, and that the evidence failed to establish that appellee voluntarily consented to be searched. These findings are supported by competent and credible evidence in the record and the trial court properly applied its findings to the applicable legal standard. State v. Burnside, 100 Ohio St.3d 152,155, 2003-Ohio-5372. We therefore find that the trial court did not err in granting the appellee's motion to suppress.
 {¶ 25} Having found that the trial court properly granted the motion to suppress on Fourth Amendment grounds, we need not address the trial court's additional finding that appellee's Fifth AmendmentMiranda rights were also violated.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal. *Page 11 
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and CHRISTINE T. McMONAGLE, J., CONCUR *Page 1