OPINION
{¶ 1} Defendant-Appellant, Don A. Stephenson, appeals a judgment of the Union County Court of Common Pleas convicting him of possession of marijuana. Stephenson maintains that the trial court erred in not granting his motion to suppress the evidence found during the search of his automobile. He claims that his consent to search the automobile was not given voluntarily. Stephenson also contends that the trial court erred in admitting into evidence hearsay testimonyover his defense counsel's objection. {¶ 2} After reviewing the entire record before us, we find that the trial over his defense counsel's objection.
 {¶ 2} After reviewing the entire record before us, we find that the trial court did not err in overruling Stephenson's motion to suppress. We also find that Stephenson initiated the introduction of the hearsay evidence in question and that he can not now complain of its admission. Accordingly, we affirm the judgment of the trial court.
 {¶ 3} On September 28, 2003, Trooper Ehrenborg of the Ohio State Highway Patrol was on routine traffic patrol in Union County, Ohio. At approximately five o'clock in the morning that day, Trooper Ehrenborg witnessed a white four door Buick travel over the yellow center line. The trooper activated his overhead lights and commenced a traffic stop of the white Buick in order to issue a citation for driving left of the center line. Stephenson was the driver of the Buick and he had three other passengers in the automobile with him, one in the front seat and two in the back seat. Upon approaching the Buick, Trooper Ehrenborg noticed that the vehicle's license plates were registered in Meigs County, Ohio, which is approximately ninety miles away from Union County. Trooper Ehrenborg also noticed that both of the back seat passengers were dressed in camouflage clothing and that their pants were wet from the knee down. He also saw a string resembling a boot lace hanging out of the automobile's trunk.
 {¶ 4} After reaching the vehicle, Trooper Ehrenborg asked Stephenson what they were doing in Union County. Stephenson responded that they were just "horsing off." Trooper Ehrenborg then asked to see Stephenson's driver's license and the registration for the automobile. Stephenson was able to produce a valid registration for the vehicle, but he did not have his driver's license on his person. Consequently, Trooper Ehrenborg removed Stephenson from his automobile and placed him in the back seat of his police cruiser while he confirmed Stephenson's information with dispatch. Before putting Stephenson into the cruiser, Trooper Ehrenborg performed a consensual search of Stephenson's outer clothing to check for weapons. During this frisk, Trooper Ehrenborg noticed that Stephenson's pants were also wet from the knee down.
 {¶ 5} While in the back seat of the cruiser, Stephenson changed his story and told Trooper Ehrenborg that he and his passengers had traveled to North Lewisburg in Champaign County, Ohio in order to collect a debt from someone named Robby Gibbs. Stephenson claimed that the passenger in the rear right side of the automobile was his stepson and that Gibbs owed his stepson some money. Stephenson informed Trooper Ehrenborg that Gibbs had been avoiding his stepson for some time because of the debt. Upon further questioning, Stephenson told Trooper Ehrenborg that they had traveled approximately one hundred and ten miles from their home in Meigs County to North Lewisburg looking for Gibbs. Stephenson reported that they had then gone to a two story white house, but had been unable to locate Gibbs. He was unable to give an exact address to the house they had visited. Stephenson was also unable to identify the string hanging out of his trunk.
 {¶ 6} When the passengers in the car were questioned concerning that night's activities they told Trooper Ehrenborg that they had visited a one story white house, not a two story house like Stephenson had related to him. They were also unable to provide an exact address to the home, despite the fact that Stephenson's stepson had supposedly resided there for a short period.
 {¶ 7} During the stop, Marysville police officer Sergeant Bo Spain arrived on the scene to aid Trooper Ehrenborg. Sergeant Spain noticed that Stephenson's stepson had a fresh cut over his right eye. When questioned about the cut, Stephenson's stepson said that he had gotten it from a stick in the driveway. The other passenger in the rear of the vehicle appeared overly nervous to the officers, and they removed him to question him outside of the presence of the other passengers. Eventually, the overly nervous passenger was placed in the back of Sergeant Spain's cruiser.
 {¶ 8} Based on the above facts, Trooper Ehrenborg became suspicious that some sort of assault, robbery, or homicide had occurred relating to Gibbs and the money he owed Stephenson's stepson. Accordingly, he contacted the Champaign County Sheriff's Department to check the surrounding areas for any reports of assaults, burglaries, or general disturbances. Despite not being able to get an exact address to Gibbs' home, Trooper Ehrenborg was able to get sufficient directions to relate a general area where the home is located to the Champaign County Sheriff's Department.
 {¶ 9} While he was waiting to hear back from the Champaign County Sheriff's department, Trooper Ehrenborg kept Stephenson in the back seat of his cruiser. Several times while they were waiting to hear back from Champaign County Trooper Ehrenborg informed Stephenson of his suspicions. He told Stephenson that the sole reason he was still holding him was to ensure that everything was okay in Champaign County and that if everything came back clean he would be free to go. After waiting for a total of approximately ninety minutes, the Champaign County Sheriff's Department reported back to Trooper Ehrenborg that there had been no reported incidences that night. Accordingly, Trooper Ehrenborg let Stephenson out of the back of the cruiser and issued him a warning for driving left of the center line; however, Stephenson's passenger was still in the back seat of Sergeant Spain's cruiser. Trooper Ehrenborg then informed Stephenson that he was free to go and gave him directions to the nearest rest stop. Trooper Ehrenborg then paused, took a step back from Stephenson, and asked him for permission to search his trunk. Stephenson agreed and Trooper Ehrenborg asked him if he was sure. Stephenson again gave his consent to the search the trunk of his automobile. Stephenson then signed a consent to search form and unlatched the trunk of the car. Upon searching the trunk, Trooper Ehrenborg found approximately 35 pounds of Marijuana. Based upon the discovery of the marijuana, Trooper Ehrenborg arrested Stephenson for possession of marijuana.
 {¶ 10} Stephenson was charged with possession of marijuana in violation of R.C. 2925.11(C)(3)(e), a felony of the third degree. Prior to his trial, he filed a motion to suppress the marijuana found during the search of his automobile. Stephenson claimed that Trooper Ehrenborg did not have sufficient reasonable articulable suspicion to detain him beyond the time necessary to issue a traffic citation. He maintained that under the totality of the circumstances his consent was not voluntary. The trial court disagreed and found that Stephenson had voluntarily consented to the search of his automobile. Accordingly, his motion to suppress was overruled, and the case was set for a jury trial.
 {¶ 11} In February of 2004, the jury found Stephenson guilty, and he was sentenced to a term of three years of incarceration. From this judgment of conviction and sentence Stephenson appeals, presenting two assignments of error for our review.
 Assignment of Error I The trial court erred when it overruled the Defendant's motionto suppress evidence obtained as a result of an unlawfuldetention and seizure of the Defendant and without the voluntaryconsent of the defendant.
 Assignment of Error II The trial court erred when it admitted, over objection,hearsay testimony from the trooper concerning a statement made bya passenger in the defendant's vehicle when that passenger wasnot present at the trial and was not subject tocross-examination.
 Assignment of Error I {¶ 12} In his first assignment of error, Stephenson contends that the trial court erred in overruling his motion to suppress the evidence gathered during the search of his automobile. Stephenson maintains that Trooper Ehrenborg did not have sufficient reasonable articulable suspicion to detain him beyond the time necessary to issue a traffic citation for driving left of the center line. Additionally, Stephenson claims that the totality of the circumstances demonstrates that he did not voluntarily give consent to search his automobile.
 {¶ 13} An appellate court's review of a motion to suppress involves mixed questions of law and fact. State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. We must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. Id. citing State v. Fanning
(1982), 1 Ohio St.3d 19, 20. However, with respect to the trial court's findings of law, we must apply a de novo standard of review and decide "whether the facts satisfy the applicable legal standard." Burnside at ¶ 8, citing State v. McNamara (1997),124 Ohio App.3d 706, 710.
 {¶ 14} The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, protect individuals from unreasonable searches and seizures on the part of the government. State v. Martinez, 3rd Dist. No. 9-02-57, 2003-Ohio-1821, at ¶ 9. It is well settled that a search conducted without a warrant issued upon probable cause is "per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357,88 S.Ct. 507. Consent is recognized as one of these well established exceptions. Schneckloth v. Bustamonte (1973) 412 U.S. 218, 219,93 S.Ct. 2041.
 {¶ 15} When a defendant is detained prior to giving consent to search his automobile, the legality of the detention is a "predicate to an intelligent resolution" of whether the consent was voluntarily given. State v. Robinette (1997),80 Ohio St.3d 234, ("Robinette III"), quoting Ohio v. Robinette (1996),519 U.S. 33, 38, 117 S.Ct. 417 ("Robinette II"). "If appellee consented to the search during an illegal detention, the state bears the burden of proving that under the totality of the circumstances, appellee's consent was `an independent act of free will,' and not a result of the illegal detention." State v.Bennett (June 21, 2000) 4th Dist. No. 99 CA 2509, citingFlorida v. Royer (1983), 460 U.S. 491, 501, 103 S.Ct. 1319;Robinette III, 80 Ohio St.3d at 243. "If, however, no illegal detention occurred, the state need not demonstrate that appellee's consent was an independent act of free will. Rather, the state must illustrate that the totality of the circumstances establish that appellee voluntarily consented to the search."Bennett supra, citing Bustamonte, 412 U.S. at 227; 3 LaFave, Search and Seizure (3 Ed. 1996) Section 8.2(d).
 {¶ 16} Thus, we must first determine whether Stephenson was illegally detained prior to giving the consent to search his automobile. Whenever a police officer accosts an individual and restricts his freedom of movement, that individual'sFourth Amendment rights become implicated. Terry v. Ohio (1968),392 U.S. 1, 16, 88 S.Ct. 1868. In order for a police officer to temporarily detain someone for investigative purposes, absent the presence of probable cause, the police officer must have a reasonable articulable suspicion that illegal activity is afoot.State v. Bobo (1988), 37 Ohio St.3d 177, 179, citing Terry,392 U.S. at 21. Reasonable articulable suspicion necessary to effectuate an investigative stop has been defined as, "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."Bobo, 37 Ohio St.3d at 178, citing Terry, 392 U.S. at 20-21.
 {¶ 17} The temporary detention of a person during a traffic stop is a seizure. State v. Kazazi, 6th Dist. No. WD-03-035, 2004-Ohio-4147, at ¶ 9, citing State v. Vass, 7th Dist. No. 01CA4, 2002-Ohio-6887, at ¶ 12. An officer who witnesses a traffic violation has probable cause, and hence a reasonable articulable suspicion, to conduct a traffic stop. Kazazi at ¶ 9, citing State v. Downs, 6th Dist. No. WD-03-030, 2004-Ohio-3003, ¶ 11-12. "However, once the stop is made, its scope must be tailored to its justification and the seizure of the driver must last no longer than reasonably necessary to effect its purpose." Kazazi at ¶ 9, citing State v. Gonyou
(1995), 108 Ohio App.3d 369, 372, citing Royer,460 U.S. at 500. Nevertheless, the stop may be prolonged if the officer gathers further information during the stop that gives rise to an independent reasonable articulable suspicion that other offenses may have been committed. Kazazi at ¶ 9, citing Robinette III,80 Ohio St.3d at 240; State v. Fuller (Sept. 27, 1989), 3rd Dist. No. 1-88-1.
 {¶ 18} Stephenson does not claim that his initial detention was illegal. He concedes that he crossed the yellow center line while driving and that Trooper Ehrenborg had probable cause to conduct a traffic stop and temporarily detain him. What Stephenson argues is that it the total length of his detention, ninety minutes, was longer than reasonably necessary to issue a warning for driving left of center. Thus, he maintains that his continued detention was beyond the scope of the initial stop and illegal. Stephenson fails to realize that the facts and reasonable inferences surrounding his traffic stop gave rise to an independent reasonable articulable suspicion that criminal activity was afoot.
 {¶ 19} Stephenson and his passengers were traveling at five o'clock in the morning in a county approximately one hundred miles away from their home. Several of the occupants of the car were wearing camouflage and their pants were wet from the knee down. What appeared to be a bootlace was hanging out of the trunk of the car. Stephenson initially claimed to be in Union County just to "horse off", but later stated that he was there to help his stepson collect money from a man named Gibbs who had been avoiding them. No one was able to provide an exact address to the house they had visited in an attempt to collect the money, despite the fact that one of the passengers had previously lived there. One of the passengers had a fresh cut above his eye, and another passenger appeared to be overly nervous. Additionally there were discrepancies between the version of the events Stephenson gave Trooper Ehrenborg and the version the other passengers of the automobile gave him.
 {¶ 20} A reasonable person could infer from these facts that Stephenson and his passengers might have been involved in some sort of criminal activity relating to their attempt to collect the debt from Gibbs. Accordingly, there was a reasonable articulable suspicion that a crime had been committed, and Trooper Ehrenborg's continued detention of Stephenson in order to investigate further was not illegal.
 {¶ 21} Furthermore, the continued detention continued only as long as necessary to investigate the suspicion. Trooper Ehrenborg contacted the Champaign County Sheriff's Department, where Stephenson had indicated he had traveled looking for Gibbs, and asked them to check and see if any assaults, burglaries, or other disturbances had been reported. Stephenson was held only as long as it took the Champaign County Sheriff's Department to check out the general area where Stephenson had indicated he and his passengers had visited. As soon as Trooper Ehrenborg learned that no disturbances had occurred that night he let Stephenson out of the back of his cruiser and told him that he was free to leave.
 {¶ 22} Finding that there was reasonable articulable suspicion for Stephenson's continued detention and that the detention lasted only as long as necessary to effectuate its purpose, we hold that Stephenson's detention was not illegal. We must now determine whether the totality of the circumstances demonstrates that Stephenson voluntarily consented to the search of his car.
 {¶ 23} After he let Stephenson out of the back of the cruiser, Trooper Ehrenborg issued Stephenson a warning for driving left of center, told him that he was free to leave, and gave him directions to the nearest rest stop. Trooper Ehrenborg then paused, stepped back, and asked Stephenson if he could search his trunk. Without hesitation, Stephenson consented to the search. Trooper Ehrenborg then asked Stephenson if he was sure. Again, Stephenson immediately responded yes. Furthermore, there was evidence that Trooper Ehrenborg had repeatedly told Stephenson while he was detaining him that he was only doing so in order to check out the situation in Champaign County, but that as soon as everything came back clean that he would be free to go.
 {¶ 24} These facts indicate that Stephenson voluntarily consented to the search. The consent was given after he had already been released from the back of the cruiser and issued a warning citation. Furthermore, he had been told that he was free to leave and even given directions to the nearest rest stop. The immediacy of Stephenson's response to Trooper Ehrenborg's request also demonstrates the voluntary nature of his consent.
 {¶ 25} Stephenson claims that the fact one of his fellow passengers was still located in the back of the other police cruiser at the time he gave his consent renders his consent involuntary. However, this is only one factor to be considered under the totality of all of the circumstances. Looking at the entire situation as a whole, we find that Stephenson voluntarily gave Trooper Ehrenborg consent to search his automobile.
 {¶ 26} Having found that Stephenson was not illegally detained and that he voluntarily gave consent to a search of his automobile, we overrule his first assignment of error. Accordingly, the decision of the trial court is affirmed.
 Assignment of Error II {¶ 27} In his second assignment of error, Stephenson contends that the trial court erred by allowing hearsay testimony into evidence. He maintains that the nature of the testimony was prejudicial and prevented him from receiving a fair trial.
 {¶ 28} At Stephenson's trial, the following exchange occurred during defense counsel's cross-examination of Trooper Ehrenborg.
Defense Counsel: Anybody else in the car claim ownership of the marijuana?
Prosecution: I'll object on hearsay, your honor.
The Court: Overruled.
Trooper Ehrenborg: Can I tell you that?
Defense Counsel: Answer the question.
Trooper Ehrenborg: The rear — his stepson had stated, wrote a statement that said, I believe, it was the stepson's father's crop they went to get. 
Then, during the state's redirect examination the following occurred.
Prosecution: Trooper, if I understand you correctly, you were just asked about a statement given by David Nance [Stephenson's stepson]. Is that right?
Trooper Ehrenborg: Correct.
Prosecution: Did David Nance also indicate that all four of them were in on getting the marijuana?
Defense Counsel: Objection, your Honor.
The Court: Overruled.
Prosecution: Did he also indicate that they all four knew about it before they went up there?
Trooper Ehrenborg: Yes, he did. He did indicate that he brought one of his friends to — defendant brought one of his friends, and they all knew that they was coming up here to get the marijuana that was supposedly owed to the stepson, and they would all divide it up. That was the reward basically. They was going to divide it up.
 {¶ 29} Stephenson claims that the testimony of Trooper Ehrenborg on redirect examination constitutes prejudicial hearsay. "The doctrine of invited error holds that a litigant may not `take advantage of an error which he himself invited or induced.'" State v. Campbell (2000), 90 Ohio St.3d 320, 324, quoting Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.
(1986), 28 Ohio St.3d 20, paragraph one of the syllabus.
 {¶ 30} It is clear from the above exchanges that Stephenson's counsel first broached the subject of hearsay statements made by passengers in Stephenson's automobile. Stephenson now claims that it was error for the trial court to allow the State to elicit on redirect examination the same testimony. On cross-examination, Stephenson's defense counsel specifically told Trooper Ehrenborg to answer the question despite the prosecution's objection that the answer would be hearsay. Under the invited error doctrine, Stephenson can not now complain that hearsay testimony was allowed into evidence after his counsel induced the court to allow such evidence into the record. Accordingly, Stephenson's second assignment of error is overruled, and the judgment of the trial court is affirmed. {¶ 31} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Cupp and Bryant, JJ., concur.