OPINION *Page 2 
{¶ 1} Defendant-Appellant, Leslie G. Wilson, appeals the judgment of the Findlay Municipal Court denying her motion to suppress evidence. On appeal, Wilson argues that the trial court erred in denying her motion to suppress evidence because the arresting officer lacked probable cause to effectuate a lawful arrest. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} In January 2007, a law enforcement officer recovered drugs and drug paraphernalia from Wilson's vehicle during a traffic stop. Thereafter, the officer arrested Wilson and cited her for one count of speeding in violation of R.C. 4511.21(D)(1), a minor misdemeanor; one count of operating a vehicle while under the influence of a drug of abuse in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; and, one count of driving with expired plates in violation of R.C. 4503.11, a misdemeanor of the fourth degree. Thereafter, Wilson was also cited for possession of drug abuse instruments in violation of R.C. 2925.12(A), a misdemeanor of the second degree, and drug possession in violation of R.C. 2925.11, a felony of the fifth degree. Subsequently, Wilson entered a plea of not guilty to all counts.
 {¶ 3} In February 2007, Wilson moved to suppress evidence obtained from the stop, including all physical evidence, observations and opinions of the law enforcement officers, the results of the field sobriety test administered, *Page 3 
evidence of refusal to take a requested breath alcohol test, and statements taken from her or made by her. In support, Wilson argued that the officers lacked reasonable grounds to effectuate a traffic stop or seizure and lacked probable cause to arrest her; that the officers lacked reasonable grounds to believe that she was operating a motor vehicle while under the influence of alcohol or a drug of abuse; and, that the officers obtained statements from her in violation of her constitutional rights.
 {¶ 4} In April 2007, the trial court held a hearing on the motion to suppress evidence, during which the following testimony was heard.
 {¶ 5} Trooper Robert Burd testified that he has been a trooper of the State Highway Patrol for fifteen years; that he has received alcohol and drug intervention training, including yearly updates; that he has received the State Trooper of the Year Award four times; and, that he has received state awards for impaired driver apprehensions. Trooper Burd continued that, on the evening of January 26, 2007, while on duty, he encountered Wilson traveling on Route 30; that the speed limit on that portion of Route 30 is fifty-five m.p.h.; that Wilson was travelling seventy-six m.p.h.; that Wilson's vehicle was "jerking back and forth within its lane" (hearing tr., p. 20); that Wilson's vehicle came up behind a semi truck and "kept riding it less than a car length" and braking (hearing tr., p. 20); that Wilson continued jerking her vehicle from side to side as if she was *Page 4 
going to pass the truck; and, that he then activated his lights and effectuated a stop of Wilson's vehicle "due to the erratic driving." (Hearing Tr., p. 21).
 {¶ 6} Trooper Burd continued that, as he approached Wilson's vehicle for the first time, he illuminated the interior of her vehicle with his spotlight and observed her "quickly and frantically" reaching to the side and "having a lot of dealings with something directly to [her] right" (hearing tr., p. 21); that her furtive movements made him concerned that she either had a weapon or was attempting to destroy or hide evidence; that Wilson appeared "extremely, extremely agitated, nervous, [and] could not sit still" (hearing tr., p. 22); that she "had to constantly be playing with her hair, touching her face, always touching her face, moving her hair, moving around * * * and she just kept moving around quickly putting things back. She'd pick it up, put it back, set [sic] back, and keep moving her hair, touching her face" (hearing tr., p. 22); that, from his experience, he knows that cocaine and methamphetamine are high stimulants which cause extreme nervousness, high levels of activity, and high levels of paranoia; that the behavior caused by these drugs is distinguishable from mere nervousness because the drug users are constantly touching themselves and are very paranoid; that, as he visually scanned the vehicle while speaking with her, he observed pieces of "chore boy" on the floor, seat, and on her clothing; that, from his experience, he knows that chore boy is copper screening which is commonly used to pack crack cocaine *Page 5 
and methamphetamine pipes; that he smelled a strong chemical-like odor coming from the vehicle; and, that the combination of Wilson's behavior, the chore boy, and the chemical smell, made him believe that she was under the influence of crack cocaine or methamphetamine.
 {¶ 7} Trooper Burd further testified that he asked Wilson to step out of the vehicle and sit in the front seat of his patrol car; that she was adamant about having her purse with her and gave him permission to look in her purse if he would bring it to her; that Wilson was seated uncuffed in the front seat of his patrol car and was still very nervous and agitated; that he asked her what was in the passenger's seat of her vehicle, and she replied cookies and potato chips; that he approached her vehicle for a second time to retrieve her purse and observed large pieces of chore boy in her open purse, on the seat, and on the floorboard; and, that he also observed a bag of cookies sitting on the passenger seat
 {¶ 8} Trooper Burd continued that he was uncomfortable being far away from Wilson due to the late hour and remote location, so he placed her in "investigative detention" and handcuffed her for her own safety because, due to her nervousness, he "did not know if she would run, run out in the field, or run out in traffic" (hearing tr., p. 30); that, at this time, he also read Wilson her Miranda rights; that he performed the vertical gaze nystagmus field sobriety test (hereinafter referred to as "VGN test") on her; that he thinks he performed the *Page 6 
VGN test prior to making the third approach to the vehicle; and, that he concluded from the test that "there was obviously drug use." (Hearing Tr., p. 36).
 {¶ 9} Trooper Burd further testified that, upon arrival of another law enforcement unit, he approached Wilson's vehicle for a third time, opened the console, and discovered a plastic bag containing a white rock substance, which was "NIK" tested and tested positive for methamphetamine; that he discovered a burnt glass pipe, which he recognized from his training and experience as a methamphetamine or crack cocaine pipe; that he discovered a Q-tip with burnt residue on the end, which he knows from training and experience is used as a plunger or cleaning tool for the pipes; that he observed ball point pen refills in the purse with burnt residue on them, which are used as plungers to pack crack cocaine or methamphetamine pipes; that he also observed scissors inside the purse which had residue on the edge; and, that he observed that some pieces of the chore boy were obviously used because they were cut down and burnt. Additionally, Trooper Burd testified that, after his third approach, he informed Wilson that she was under arrest for possession of illegal narcotics and that his basis for arresting Wilson was her erratic driving, speeding, agitated and nervous state, drug paraphernalia, and subsequent behavior (falling asleep) which indicated that she was "coming down off the high." (Hearing Tr., p. 39). *Page 7 
 {¶ 10} On cross-examination, Trooper Burd testified that he did find a bag of cookies in the passenger seat of the vehicle and that may have been why she was leaning over into the passenger seat, but that he did not observe any cookie crumbs or cookies anywhere other than in the bag itself; that Wilson's actions in moving her car to the left of her lane and then back to the right were consistent with those of a driver attempting to pass another vehicle, but that her attempts were dangerous because she was so close to the back of the truck that she had to go out over half a car length into the next lane to see; that he could not identify what the particular chemical smell was; that, on the second approach he only found more chore boy and did not find the burnt residue, ball point pen refills, or pipes; that, after he handcuffed Wilson and put her under "investigative detention," she was not free to leave; that an investigative detention is not an arrest; and, that Wilson was detained in his patrol car between ten minutes and "way under an hour." (Hearing Tr., p. 56).
 {¶ 11} In July 2007, the trial court denied Wilson's motion to suppress, stating, in pertinent part:
 * * * This Court likewise finds that based upon [Wilson's] erratic driving, her movement in her vehicle, her extremely agitated state, her high strung nervousness, the other surrounding circumstances of the stop, and the observation of the "chore boy" material, Trooper Burd possessed an objectively reasonable belief that Wilson was engaged in criminal activity and/or may have been armed and dangerous. * * * At that moment, Trooper Burd was *Page 8 authorized to detain [Wilson] for as long as it took for him to confirm or dispel his suspicions. * * * In addition, since Trooper Burd observed the "chore boy" material in plain view and recognized it as contraband taking into account the other circumstances at the time of the stop, he was free to make a warrantless search of [Wilson's] vehicle, and its contents. * * * Finally, this Court also finds that the automobile exception to the warrant requirement for a search of [Wilson's] automobile would apply due to the exigency of the situation and the danger that any contraband could be hidden, removed, or destroyed.
(July 2007 Judgment Entry, pp. 5-6).
 {¶ 12} In November 2007, Wilson withdrew her not guilty plea and entered a plea of no contest to operating a vehicle while under the influence of a drug of abuse and driving with expired registration. Subsequently, the trial court convicted Wilson of both counts and sentenced her to a thirty-day jail term and $350 fine for operating a vehicle while under the influence of a drug of abuse and to a $100 fine for driving with expired registration.
 {¶ 13} It is from the July 2007 denial of the motion to suppress evidence that Wilson appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN DENYING APPELLANT'S MOTION TO SUPPRESS ANY AND ALL EVIDENCE OBTAINED BY AGENTS OF THE STATE SUBSEQUENT TO APPELLANT'S ARREST AS THE ARRESTING OFFICER LACKED PROBABLE CAUSE TO EFFECTUATE A LAWFUL ARREST. *Page 9 
 {¶ 14} In her sole assignment of error, Wilson asserts that the trial court erred in denying her motion to suppress evidence because the arresting officer lacked probable cause to arrest her. Specifically, Wilson contends that, when Trooper Burd placed her in his patrol car, she was not under "investigative detention," but was officially arrested; that her detention cannot be categorized as an investigative stop or a "Terry" stop; that her arrest and seizure was unlawful because it was without probable cause; and, that, consequently, any evidence obtained subsequent to her unlawful arrest should have been suppressed pursuant to the exclusionary rule. We disagree.
 Standard of Review {¶ 15} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." State v. Dudli, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶ 12, citing United States v.Martinez (11th Circ. 1992), 949 F.2d 1117. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented.State v. Johnson (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. State v. Roberts,110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing State v. Fanning (1982),1 Ohio St.3d 19, 20. The appellate court must then review the *Page 10 
application of the law to the facts de novo. Roberts, supra, citingState v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.
 Search and Seizure {¶ 16} The Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither the Fourth Amendment nor Section 14, Article I explicitly requires that violations of its provisions against unlawful searches and seizures be remedied by suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. Mapp v. Ohio (1961), 367 U.S. 643, 649.
 {¶ 17} At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, City of Xenia v. Wallace
(1988), 37 Ohio St.3d 216, at paragraph two of the syllabus; State v.Kessler (1987), 53 Ohio St.2d 204, 207, and that it meetsFourth Amendment standards of reasonableness. Maumee v. Weisner,87 Ohio St.3d 295, 297, 1999-Ohio-68, citing 5 LaFave, Search and Seizure (3 Ed. 1996), Section 11.2(b).
 {¶ 18} When a law enforcement officer accosts an individual and restricts his freedom of movement, the Fourth Amendment is implicated.State v. Stephenson, 3d Dist. No. 14-04-08, 2004-Ohio-5102, ¶ 16, citingTerry v. Ohio *Page 11 
(1968), 392 U.S. 1, 16. Generally, in order for a law enforcement officer to conduct a warrantless search, he must possess probable cause, which means that "`there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v.Carlson (1995), 102 Ohio App.3d 585, 600, quoting Illinois v. Gates
(1983), 462 U.S. 213, 214.
 {¶ 19} Even where probable cause is lacking, it is well-established that a law enforcement officer may temporarily detain an individual where he has a reasonable articulable suspicion that the individual is engaging in criminal activity. State v. Bobo (1988), 37 Ohio St.3d 177,179, citing Terry, 392 U.S. at 21. Such detention may be referred to as investigatory detention or a "Terry" stop. Reasonable articulable suspicion is "`specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" Stephenson, 2004-Ohio-5102, at ¶ 16, quoting Bobo,37 Ohio St.3d at 178. In forming reasonable articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" United States v. Arvizu (2002), 534 U.S. 266, 273, quotingUnited States v. Cortez (1981), 449 U.S. 411, 417-418.
 {¶ 20} The temporary detention of an individual during a traffic stop is a seizure. Stephenson, 2004-Ohio-5102, at ¶ 17, citing State v.Kazazi, 6th Dist. *Page 12 
No. WD-03-035, 2004-Ohio-4147, at ¶ 9. Further, an officer who witnesses a traffic violation possesses probable cause, and a reasonable articulable suspicion, to conduct a traffic stop. Id. "`However, once the stop is made, its scope must be tailored to its justification and the seizure of the driver must last no longer than reasonably necessary to effect its purpose.'" Id., quoting Kazazi, 2004-Ohio-4147, at ¶ 9. Nevertheless, the officer may prolong the stop if he gathers further information during the stop that gives rise to an independent reasonable articulable suspicion that other offenses may have been committed or are being committed. Id., citing Kazazi, 2004-Ohio-4147, at ¶ 9, citing State v.Robinette (1997), 80 Ohio St.3d 234, 240. The stop may continue for as long as the new reasonable articulable suspicion persists. State v.Venham (1994), 96 Ohio App.3d 649, 655; Robinette, 80 Ohio St.3d at 241.
 Investigatory Detention and Arrest {¶ 21} An investigatory detention may escalate into an arrest, and determining when this occurs can be difficult. As the Tenth Appellate District has stated:
 [t]here is no bright line rule for determining when a Terry stop has escalated into an arrest. * * * Factors to be considered in distinguishing an investigative stop from a de facto arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds. *Page 13 
Columbus v. Galang, 10th Dist. No. 02AP-1441, 2003-Ohio-4506, ¶ 16, quoting State v. Martinez (1996), 925 P.2d 1125, 1129. Four elements are involved in determining whether an individual has been arrested: "`(1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested.'"State v. Darrah (1980), 64 Ohio St.2d 22, 26, quoting State v.Barker (1978), 53 Ohio St.2d 135, 139 (citations omitted). However, when an arrest occurs depends on the specific circumstances of the case.Galang, 2003-Ohio-4506, at ¶ 16, citing State v. Finch (1985),24 Ohio App.3d 38, 39.
 {¶ 22} In determining when an arrest has taken place, courts have found that an officer requesting that an individual sit in his cruiser does not automatically escalate an investigative detention into an arrest. State v. Pickett (2000), 8th Dist. No. 76295, 2000 WL 1060653,State v. Carlson (1995), 102 Ohio App.3d 585. In fact, the Supreme Court of Ohio has held that it is reasonable for an officer during a routine traffic stop to place the driver in his cruiser during the investigation if this action prevents the driver from being subjected to a dangerous condition. State v. Lozada, 92 Ohio St.3d 74, 79, 2001-Ohio-149. Additionally, courts have found that the handcuffing of a defendant does not automatically transform an investigative detention into an arrest.State v. Mays (1995), 104 Ohio App.3d 241; Columbus v. Dials, 10th Dist. No. 04AP-1099, 2005-Ohio-6305; State v. Williams *Page 14 
(2001), 5th Dist. No. 01-CA-00026, 2001 WL 1744474. Finally, courts have found that the recitation of Miranda rights to an individual under investigative detention does not necessarily mean that the detention has become an arrest. State v. Broomfield (1996), 2d Dist. No. 95-CA-0103,1996 WL 537478.
 The Automobile Exception {¶ 23} A search conducted without a warrant is lawful if it is based on the automobile exception to the warrant requirement. Pursuant to this exception, "`[o]nce a law-enforcement officer has probable cause to believe that a vehicle contains contraband, the officer may search a validly stopped motor vehicle[.]'" State v. Blevins, 3d Dist. No. 9-06-40, 2007-Ohio-6972, at ¶ 39, quoting State v. Ward, 1st Dist. No. C-040379, 2005-Ohio-3036, citing Maryland v. Dyson (1999), 527 U.S. 465. See, also, United States v. Ross (1982), 456 U.S. 798, at syllabus. Additionally, "`[w]here police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that may logically conceal the object of the search.'"Blevins, 2007-Ohio-6972, at ¶ 41, quoting State v. Welch (1985),18 Ohio St.3d 88, at syllabus, citing Ross, supra.
 Assignment of Error {¶ 24} Initially, we note Wilson does not dispute that she committed a traffic violation, and, therefore, that Trooper Burd had probable cause to effectuate *Page 15 
the initial stop of her vehicle. Accordingly, Wilson's objections focus on Trooper Burd's actions after the initial stop.
 {¶ 25} Here, Wilson seeks to suppress all of the evidence obtained after she was placed under investigative detention. First, we will address the physical evidence, the drugs and drug paraphernalia, discovered in her vehicle.
 {¶ 26} While effectuating the lawful stop of Wilson's vehicle, Trooper Burd saw chore boy, which is an item commonly associated with drug use, in plain view both on the vehicle's interior and on Wilson's clothing. See State v. Moyar, 3d Dist. No. 2-06-10, 2006-Ohio-5974; State v.Nash, 8th Dist. No. 86301, 2006-Ohio-1351; State v. Biggert, 6th Dist. No. OT-03-044, 2004-Ohio-4146; State v. Keller (2000), 9th Dist. No. 19449, 2000 WL 254896. Additionally, the record reflects that Trooper Burd was aware that chore boy is commonly used when smoking cocaine and methamphetamine. Further, Trooper Burd observed that Wilson was extremely nervous, agitated, paranoid, and was constantly touching herself. The record reflects that Trooper Burd was aware that this behavior is characteristic of individuals who are under the influence of cocaine or methamphetamine. Therefore, in total, Trooper Burd observed: (1) her erratic driving, (2) her frantic dealings with something in the passenger seat, (3) her extreme nervousness, agitation, and paranoia, (4) the strong chemical odor emanating from the vehicle, and (5) that pieces of the chore boy were burnt. We *Page 16 
find that these circumstances, particularly in light of Trooper Burd's experience and training, amounted to a reasonable articulable suspicion of criminal activity that permitted Trooper Burd to prolong the stop beyond its original purpose and temporarily detain Wilson. Additionally, we find that the totality of these circumstances gave Trooper Burd probable cause to search Wilson's vehicle for contraband extending to the areas he searched under the automobile exception to theFourth Amendment warrant requirement.[1]
 {¶ 27} Next, Wilson contends that, when she was placed under "investigative detention," she was really unlawfully placed under arrest. Accordingly, she contends that the trial court erred in failing to suppress the results of the field sobriety test, the observations and opinions of Trooper Burd, statements she made, and evidence of her refusal to submit to a blood alcohol test.
 {¶ 28} Initially, we note that the legality of Wilson's arrest is irrelevant to the physical evidence recovered pursuant to the search of the vehicle. The warrantless search of the vehicle was independently authorized under the automobile exception, and, accordingly, would not be subject to exclusion even if we were to assume that Wilson's arrest was unlawful. *Page 17 
 {¶ 29} Here, Trooper Burd read Wilson her Miranda rights, handcuffed her, and placed her in the front seat of the cruiser for a period between ten minutes and considerably less than one hour. Trooper Burd testified that he handcuffed her and placed her in the cruiser for safety purposes due to his belief that, because of her behavior, she may have run away or run into traffic. Under Pickett, Mays, andBroomfield, placement in a cruiser, handcuffing, and Mirandizing of an individual alone do not automatically elevate an investigatory detention into an arrest. Furthermore, Lozada specifically held that it is reasonable for an officer to place an individual in his cruiser during a traffic stop to prevent the driver from being subjected to a dangerous condition. Here, we find that this includes the unique situation where the traffic stop takes place late at night, in a remote location, and the driver is extremely nervous, paranoid, and displaying behavior indicating that she is under the influence of drugs, causing the officer to be concerned that she will run away or run into traffic. Therefore, based on the totality of the circumstances, we find that the investigative detention of Wilson was not an arrest and that the trial court did not err in overruling her motion to suppress.
 {¶ 30} Finally, we note that, after Trooper Burd discovered the drugs and drug paraphernalia in Wilson's vehicle and after he conducted the field sobriety test, which she failed, there is no question that he possessed probable cause to *Page 18 
arrest her. See State v. Miller (1993), 91 Ohio App.3d 270, 273. Accordingly, her arrest following the investigative detention was lawful.
 {¶ 31} Accordingly, we overrule Wilson's assignment of error.
 {¶ 32} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 SHAW, P.J., and WILLAMOWSKI, J., concur.
[1] We note that, after discovering that Wilson's registration was expired, which is a fourth degree misdemeanor, Trooper Burd had probable cause to arrest her. Accordingly, the State could have also pursued the search incident to arrest and/or inevitable discovery pursuant to an inventory search exceptions to the Fourth Amendment warrant requirement. See New York v. Belton (1981), 453 U.S. 454; State v. Perkins (1985)18 Ohio St.3d 193. *Page 1