OPINION *Page 2 
{¶ 1} The defendant-appellant, Daniel Riter, appeals the judgment of the Defiance County Common Pleas Court convicting him of possession of cocaine and sentencing him to community control sanctions for three years. On appeal, Riter challenges the trial court's denial of his motion to suppress evidence. For the reasons set forth herein, the judgment of the trial court is affirmed.
 {¶ 2} On January 11, 2008, the Defiance County Grand Jury indicted Riter on one count of possession of cocaine, a violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony. On February 12, 2008, Riter filed a motion to suppress, arguing that the initial detention, the pat-down search, and the subsequent seizure of drug paraphernalia from his pocket were unlawful. After the arrest, the officer asked Riter to empty his pockets. The officer placed all of Riter's belongings in a plastic bag and later inventoried the items at the sheriff's department. Among the items inventoried was a tube containing a white, powdery residue, which field-tested positive for cocaine. The trial court conducted a suppression hearing on March 20, 2008, and on March 26, 2008, the court overruled Riter's motion. On April 10, 2008, the trial court filed its judgment entry reflecting Riter's change of plea from "not guilty" to "no contest" and finding him guilty of the offense as charged. On June 10, 2008, the trial court filed its judgment entry of sentence, *Page 3 
ordering Riter to serve three years on community control sanctions. Riter timely filed a notice of appeal and raises one assignment of error for our review.
 Assignment of Error The court erred in overruling [Riter's] motion to suppress.
 {¶ 3} The Supreme Court of Ohio has determined that:
 "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Fanning (1982), 1 Ohio St.3d 19, [20], 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. State v. McNamara (1997), 124 Ohio App.3d 706, 707 N.E.2d 539."
In re: A.J.S., ___ Ohio St.3d ___, 2008-Ohio-5307, ___ N.E.2d ____, at ¶ 50, quoting State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8. "Under the Terry analysis, [which will be discussed below,] the standard of review as to whether an officer's actions were justified is to be the `totality of the circumstances.' The totality of the circumstances are `* * * to be viewed from the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold.'" State v. Foster (Feb. 18, 2000), 2d. Dist. No. 17886, quoting State v. Andrews (1991), 57 Ohio St.3d 86,565 N.E.2d 1271. *Page 4 
 {¶ 4} In its judgment entry denying Riter's motion to suppress, the trial court made no findings of fact but indicated that it had reviewed the motion, the testimony, and the arguments of counsel. (J. Entry, Mar. 26, 2008).
 {¶ 5} "The Fourth Amendment [of the United States Constitution] provides that `the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *.' This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." (Emphasis added). Terry v. Ohio (1968), 392 U.S. 1, 8-9,88 S.Ct. 1868, 20 L.Ed.2d 889. Similar protection exists pursuant to Section 14, Article I of the Ohio Constitution. See State v.Wilson, 3d Dist. No. 5-07-47, 2008-Ohio-2742, at ¶ 16. To remedy an unlawful search and seizure, evidence obtained therefrom will be suppressed. Id., citing Mapp v. Ohio (1961), 367 U.S. 643, 649,81 S.Ct. 1684, 6 L.Ed.2d 1081.
 {¶ 6} Where probable cause does not exist for a detention and search, an officer of law enforcement "may temporarily detain an individual where he has a reasonable articulable suspicion that the individual is engaging in criminal activity. Id., at ¶ 19, citing State v. Bobo
(1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, citing Terry, at 21. "Reasonable articulable suspicion is `"specific and articulable facts which, taken together with rational inferences from those *Page 5 
facts, reasonably warrant the intrusion."'" Id., quoting State v.Stephenson, 3d Dist. No. 14-04-08, 2004-Ohio-5102, at ¶ 16, quotingBobo, at 178. "In forming reasonable articulable suspicion, law enforcement officers may `draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."'" Id., quoting United States v. Arvizu (2002), 534 U.S. 266,273, 122 S.Ct. 744, 151 L.Ed.2d 740, quoting United States v.Cortez (1981), 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621.
 {¶ 7} Since Riter challenges each "step" of his detention and the subsequent search and seizure, we begin our analysis with the officer's stop of Riter. At the suppression hearing, the court heard testimony from Austin Cape, a deputy with the Defiance County Sheriffs Office. Cape testified that he was working second shift (3:00 p.m.-11:00 p.m.) on September 6, 2007 at approximately 10:20 p.m. when he drove past Newman's Carry Out in a marked patrol car and observed four to five juveniles near the pay phone. One of the juveniles ran into the "woods" upon seeing him. (Hearing Tr., Jul. 31, 2008, at 6). Cape stopped and approached the remaining juveniles, who identified "Tyler" as the kid who ran and told Cape that Tyler lived in the house next to the store. (Id. at 7). Cape radioed for back-up, identified the juveniles he had talked to, and then went to the residence in search of Tyler. (Id.) While he was at the residence, *Page 6 
Deputy Dana Phipps arrived and talked with the remaining juveniles. (Id. at 8). Since he was talking to Tyler at the residence, Cape had no personal knowledge of what happened between Phipps and Riter, except that he heard some "yelling back and forth." (Id. at 10). Upon his return to the store, Cape was informed by Phipps that Riter was in possession of drug paraphernalia and was being arrested. (Id. at 8).
 {¶ 8} Phipps also testified at the hearing. He stated that he had been a deputy sheriff for approximately nine months on September 6, 2007, and he was also on second shift when he heard Cape's request for back-up. (Id. at 11-13). Upon his arrival, Phipps observed two individuals outside Newman's Carry Out. (Id. at 13). Both identified themselves to Phipps and said Riter had been talking on the pay phone. (Id. at 14). However, Riter told Phipps he was talking to "Jerod" and the other individual said Riter had been talking to "his aunt." (Id.). At that point, Phipps walked Riter away from the other individual to ask him more questions. (Id.).
 {¶ 9} At the time Riter walked away from the other individual with Phipps, Phipps knew that Cape had seen a group of presumed juveniles near the pay phone; that one of the juveniles had run away upon seeing Cape's vehicle; and that he had received inconsistent answers to a seemingly innocent question. (Id. at 13-14). Generally: *Page 7 
 [a]n officer may briefly detain a suspicious individual in order to determine his or her identity or to maintain the status quo while obtaining more information if specific facts known to the officer indicate that a crime is occurring or is about to occur. State v. Williams (1990), 51 Ohio St.3d 58, 60, citing Terry v. Ohio (1968), 392 U.S. 1. If during a Terry stop, "the suspect gives evasive or implausible answers, this conduct combined with other factors may justify continued detention and investigation."
State v. Williams (Dec. 12, 2001), 5th Dist. No. 01-CA-00026, quoting State v. McCrone (1989), 63 Ohio App.3d 831, 837,580 N.E.2d 468. Based on Phipps' knowledge at the time he separated Riter from the other individual, we cannot hold that his detention of Riter was unreasonable. See also State v. Johnson (Sep. 29, 1995), 3d Dist. No. 13-95-30, citing Berkemer v. McCarty (l984), 468 U.S. 420,104 S.Ct. 3138, 82 L.Ed.2d 317 (detention was reasonable to ascertain identity and "to further investigate the discrepancy concerning the vehicle's registration.").
 {¶ 10} The next "step" Riter challenges is the pat-down search. Phipps testified that once he had separated Riter from the other individual, Riter became "real agitated, real nervous, rocking back and forth." (Hearing Tr. at 14). Phipps indicated that Riter was "real fidgety with his hands, not wanting, keep wanting to put his hands in his pocket. I kept asking him to keep his, to take his hands out of his pockets. Just kind of would look away from me. When asked a question, wouldn't answer me directly." (Id.). At that point, Phipps decided to do a pat-down search for his own safety and told Riter he was going to do so. (Id.).
 {¶ 11} In Terry, the court stated: *Page 8 
 Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger .
(Emphasis added). Terry, at 27 (citations omitted). This standard does not require the officer to have "sufficient probable cause to make a valid arrest." State v. Price (Jun. 10, 1987), 2d Dist. No. 9760, citingAdams v. Williams (l972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612;United States v. Brignoni-Ponce (l975), 422 U.S. 873, 95 S.Ct. 2574,45 L.Ed.2d 607; Pennsylvania v. Mimms (l977), 434 U.S. 106, 98 S.Ct. 330,54 L.Ed.2d 331; United States v. Mendenhall (l980), 446 U.S. 544,100 S.Ct. 1870, 64 L.Ed.2d 497; United States v. Hensley (l985), efficient that he has a reasonable basis to believe that his safety requires a search or seizure.'" State v. McMillin, 6th Dist. No. H-04-018, 2005-Ohio-2096, at ¶ 31, quoting State v. Smith (1978),56 Ohio St.2d 405, 409, 384 N.E.2d 280. The court must consider the "totality of the circumstances surrounding the particular incident" to determine if a Terry frisk was reasonable. State v. Price (Jun. 10, 1987), 2d Dist. No. 9760, citing United States v. Cortez (l981),449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621; State v. Freeman,64 Ohio St.2d 291, 414 N.E.2d 1044. See also Bobo, at paragraph two of the syllabus. The Supreme Court of the *Page 9 
United States "has recognized that safety of police officers is `legitimate and weighty.'" State v. Lozada (2001), 92 Ohio St.3d 74, 79, 748 N.E.2d 520, quoting Mimms, at 110.
 {¶ 12} One of the factors considered by Phipps was Riter's nervous, agitated, and fidgety state. In State v. Johnson (Sep. 29, 1995), 3d Dist. No. 13-95-30, the court upheld a Terry frisk when the officer had observed the defendant leave a building the officer knew was used for trafficking drugs, the defendant was nervous and fidgety, and the defendant had already lied to the officer. In State v. Gaspard (Feb. 29, 1996), 3d Dist. No. 12-95-12, the court upheld a Terry frisk when the defendant was sweating and nervous, but the defendant also admitted that weapons were present in the vehicle. However, in State v. Stewart, 8th Dist. No. 87237, 2006-Ohio-5934, the court of appeals reversed the trial court's judgment denying the defendant's motion to suppress. The court declined to hold that the nervous swinging of arms alone was sufficient to justify a Terry pat down search.
 {¶ 13} Another factor considered by Phipps was Riter's repeated placement of his hands in his pockets despite Phipps' repeated instructions to remove his hands from his pockets. In State v.McMillin, 6th Dist. No. H-04-018, 2005-Ohio-2096, the court upheld a Terry frisk where the occupants of a vehicle were suspected of transporting drugs, and the defendant and the driver were observed *Page 10 
making "furtive movements." In particular, the defendant was observed placing her hands under her leg and between the seat and the passenger door of the car after repeated instructions to stop the acts. InState v. Thomas, 2d Dist. No. 20643, 2005-Ohio-3064, the court upheld aTerry pat down where the defendant put his hands in his pocket, two other people fled the scene, and another officer returned to the scene after recovering guns from the people who had fled. In State v.Price (Jun. 10, 1987), 2d Dist. No. 9760, the court upheld aTerry frisk where the defendant was reluctant to remove his hands from his pockets and the officer knew the defendant was a fugitive. InState v. Goode (Feb. 9, 1978), 8th Dist. No. 36975, the defendant put his hands in his pockets after being informed that the officer was a federal agent. The court held "[t]his combination of circumstances warranted further investigation by Officer Johnson for his safety and that of the officers in the apartment." In State v.Hillis, 2d Dist. No. 19939, 2004-Ohio-1020, the court upheld aTerry pat down where the defendant stepped in front of an officer's car. When the officer made contact with the defendant, she apologized for stepping in front of his car and put her hands in her pockets. When the officer asked Hillis to remove her hands from her pockets, the defendant did so. However, the interaction took place in a high-crime area, and considering only these two factors, the court determined that the search was reasonable. Hillis, at ¶ 8, citing State v. Woods, 2d Dist. No. 19385, 2003-Ohio-3759. In State v. Ramey *Page 11 
(l971), 30 Ohio Misc. 89, 282 N.E.2d 65, an officer came into contact with the defendant and conducted a pat down search. As the officer started the frisk, the defendant "`immediately put his right hand towards his right front jacket pocket.'" The court held that the search was unlawful based on the sequence of events. However, it stated, "[h]ad the move toward the pocket been made first, or prior to the decision to search being made and the search actually being commenced, rather than immediately after the search began, the Court would have no difficultyin upholding the search as a proper one under the Terry decision." (Emphasis added.).
 {¶ 14} While the factors in this case were not as egregious as some of the above referenced cases where additional factors were considered, such as the officer being in a high-crime area, or the defendant being engaged in drug trafficking, the facts of this case are not as innocent as the mere nervous swinging of one's arms. On this issue, we find theGoode and Hillis cases to be instructive. In those cases, the defendants placed their hands in their pockets coupled with seemingly de minimis factors: the officer's identification as a federal marshal and a presence in a high-crime area, respectively. Also of some persuasive value is the dicta in Ramey in which the court opined that the defendant reaching for his pocket prior to the search would have justified aTerry frisk. The state admits that Riter was not in a high-crime area, and since both Cape and Phipps were in *Page 12 
uniform and driving marked patrol cars, there was certainly no surprise in their identities as law enforcement. However, there are other factors, which would enhance the seriousness of Riter putting his hands in his pockets, such as the fact that he did so repeatedly despite Phipps repeated orders to desist, his evasive, or at least unresponsive, answers to Phipps' questions, the inconsistent answers about who Riter had been talking to on the phone, and the fact that Tyler ran away when he saw Cape's marked patrol car. In considering the totality of the circumstances, we must consider all of these factors, not just any one of them in isolation, and in so doing, we must reach the conclusion that Phipps provided specific and articulable facts to justify a limitedTerry frisk for his own safety.
 {¶ 15} The next "step" Riter challenges is Phipps' search of his pocket. Upon performing the pat down search of Riter, Phipps detected a "hard object" in Riter's front, left pants pocket and thought the object "could be used as a weapon." (Hearing Tr., at 15). Phipps immediately asked Riter to remove the item from his pocket. (Id. at 15; 40). At that point, Riter "rocked and flung away from [Phipps] striking [him] in the chest with his arm and simultaneously, at the same time, pulling the object out of his pocket and at [Phipps.]" (Id.). Phipps' written narrative, admitted as Defendant's Exhibit A, indicated that Riter broke Phipps' name plate when he hit him in the chest. In response to questioning by the court, Phipps stated that after Riter removed the object from his pocket, he could see it *Page 13 
was a glass bowl (used for the ingestion of marijuana) approximately two to three inches in diameter. (Id. at 42).
 Terry does not require that the officer be absolutely convinced that the object he feels is a weapon before grounds exist to remove the object. At the same time, a hunch or inarticulable suspicion that the object is a weapon of some sort will not provide a sufficient basis to uphold a further intrusion into the clothing of a suspect. When an officer removes an object that is not a weapon, the proper question to ask is whether that officer reasonably believed, due to the object's "size or density," that it could be a weapon.
 Under the better view, then, a search is not permissible when the object felt is soft in nature. If the object felt is hard, then the question is whether its `size or density' is such that it might be a weapon. But because `weapons are not always of an easily discernible shape,' it is not inevitably essential that the officer feel the outline of a pistol or something of that nature. Somewhat more leeway must be allowed upon `the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing,' which is most likely to occur when the suspect is wearing heavy clothing." (Footnotes omitted.)
(emphasis added). State v. Evans (l993), 67 Ohio St.3d 405, 415,618 N.E.2d 162, quoting 3 LaFave, Search and Seizure (2 Ed. 1987) 521; 523 Section 9.4(c). The court went on to note, "`[i]f by touch the officer remains uncertain as to whether the article producing the bulge might be a weapon, he is entitled to remove it.'" Id., at 416, quoting UnitedStates v. Oates (C.A.2, 1977), 560 F.2d 45, 62 (removal of an overstuffed wallet justified when the officer could not determine what caused the bulge by feeling it through defendant's outer clothing). *Page 14 
 {¶ 16} Based on his testimony, Phipps was not able to identify the "precise nature or shape" of the "hard object" in Riter's pocket. Police officers are generally prohibited from conducting more than a cursory search of a suspect during a Terry frisk. See generally Minnesota v.Dickerson (1993), 508 U.S. 366, 375-376, 113 S.Ct. 2130,124 L.Ed.2d 334. Phipps apparently conducted a frisk within the scope ofTerry since there was no evidence that he manipulated the "hard object" in Riter's pocket before asking Riter to remove it. Rather than reaching into Riter's pocket with his own hand, a practice which could subject a police officer to numerous other hazards, Phipps asked Riter to remove the object, and Riter complied. On this record, we cannot hold that Phipps violated Riter's constitutional rights against unreasonable seizures.
 {¶ 17} Riter does not contest the subsequent seizure of the straw, which contained cocaine residue. He apparently recognized that the seizure of the straw was lawful as a search incident to arrest or was valid as an inventory seizure. See generally State v. Murrell,94 Ohio St.3d 489, 491-492, 2002-Ohio-1483, 764 N.E.2d 986, citing New York v.Belton (l981), 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768;Blue Ash v. Kavanagh, 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, at ¶ 11, citing South Dakota v. Opperman (1976), 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000. For the reasons stated herein, the sole assignment of error is overruled. *Page 15 
 {¶ 18} The judgment of the Defiance County Common Pleas Court is affirmed.
Judgment affirmed.
 PRESTON, J., concurs.
 ROGERS, J., dissents. *Page 1