[Cite as *State v. Graziani*, 2010-Ohio-3550.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

STATE OF OHIO,                                       CASE NO. 4-10-01

    PLAINTIFF-APPELLEE,

 v.

BRIAN L. GRAZIANI,                                  **O P I N I O N**

    DEFENDANT-APPELLANT.

**Appeal from Defiance County Common Pleas Court
Trial Court No. 08CR10393**

**Judgment Affirmed**

**Date of Decision:  August 2, 2010**

APPEARANCES:

    *Todd B. Guelde,* **for Appellant**

    *Russell R. Herman,* **for Appellee**

**WILLAMOWSKI, P.J.,**

{¶1} Defendant-Appellant, Brian L. Graziani ("Graziani"), appeals the judgment of the Defiance County Court of Common Pleas finding him guilty of possession of illegal drugs. On appeal, Graziani claims that there was insufficient evidence to support the jury's verdict and that the trial court erred when it denied his motion to suppress because Graziani did not voluntarily consent to a search of the interior of his truck. For the reasons set forth below, the judgment is affirmed.

{¶2} On September 20, 2008, at approximately 3:20 a.m., Deputy Austin Cape of the Defiance County Sheriff's Department observed a pick-up truck pulling out from behind a local business, Martin Diesel, with a large amount of wire hanging out of the bed of the truck. Deputy Cape initiated a traffic stop due to his suspicion that the wire might have been stolen. The deputy asked Graziani, who was driving the vehicle, to step outside the truck while he questioned him. During this time, the deputy also kept a close watch on the female passenger, Samantha Fenter[1] ("Ms. Fenter" or "Samantha"), who remained alone in the vehicle for less than ten minutes while the deputy questioned Graziani.

{¶3} Graziani told the deputy that he and Ms. Fenter were "parking" behind Martin Diesel for a "romantic interlude," and that they did not steal anything from the company. He explained that the wire and items in the back of

---

[1] Samantha Fenter claimed she did not have her I.D., and she gave the officer the name and Social Security number of her twin sister, Cindel Fenter. Samantha was on community control for shoplifting at the time and being out this late was in violation of her curfew.

the truck were given to him by his girlfriend's relative. The deputy asked Graziani if there was anything illegal in the vehicle and also asked if it would be all right to search the vehicle. Graziani denied that there was anything illegal in the truck and consented to a search.

{¶4} Deputy Cape radioed that he would be conducting a vehicle search and asked Ms. Fenton to exit the vehicle. Shortly thereafter, Deputy Dana Phipps arrived to provide back-up support. The proprietors of Martin Diesel were also called. They confirmed that the items in the back of the truck did not belong to the business. They also checked out the business premises with Deputy Phipps and determined that it did not appear as if anything had been taken.

{¶5} During the search of the vehicle, Deputy Cape discovered a black electronic scale with powdery residue in the glove compartment in front of the passenger seat. He also discovered two glass pipes in a case behind the driver's visor. The pipes were the kind commonly used for illegal substances and they also contained residue. The pipes and scale were taken as evidence and sent to a laboratory for further testing. After confirming that the items in the back of the truck had not been stolen from the business, Graziani and Ms. Fenter were permitted to leave.

{¶6} The laboratory results showed that the residue on the scale was cocaine and the residue in the pipe was methamphetamine. On December 8, 2008, the Defiance County Grand Jury indicted Graziani on the following two counts:

Count 1 – possession of cocaine, a felony of the fifth degree in violation of R.C. 2925.11(A)(C)(4)(a); and Count 2 – aggravated possession of drugs, a felony of the fifth degree in violation of R.C. 2925.11(A)(C)(1)(a).

{¶7} Graziani filed a motion to suppress and a hearing was held on June 12, 2009. At the hearing, Graziani claimed that his permission to search the vehicle was not voluntarily given and that it did not extend to the interior of the vehicle. The trial court denied the motion to suppress.

{¶8} On October 27, 2009, a trial was held and the jury heard the testimony of Deputy Cape, Deputy Phipps, and the deputy in charge of the chain of custody for the evidence. Ms. Fenter and her twin sister were called by the defense to testify. The jury found Graziani guilty of both counts in the indictment.

{¶9} On December 16, 2009, after reviewing the pre-sentence investigation report, the trial court sentenced Graziani to eleven months in prison on each of the counts, with the sentences to run consecutively. The judgment entry was filed January 11, 2010, and it is from this decision that Graziani appeals, raising the following two assignments of error for our review.

### First Assignment of Error

**The verdict for Count 1 was not supported by sufficient evidence to prove beyond a reasonable doubt that Mr. Graziani knowingly obtained, possessed, or used cocaine, a violation of R.C. 2925.11(A)(C)(4)(a).**

## Second Assignment of Error

**The trial Court erred in denying Mr. Graziani's Motion to Suppress when it determined that the totality of circumstances establish[ed] that Mr. Graziani voluntarily consented to the search of the vehicle.**

{¶10} In the first assignment of error, Graziani argues that there was insufficient evidence for the jury to find that he was guilty beyond a reasonable doubt of knowingly possessing a controlled substance, namely cocaine.[2] Graziani contends that the State did not produce sufficient direct or circumstantial evidence to support a finding that Graziani was conscious of the presence of the black scale with drug residue that was found in the glove compartment. He contends that there was no evidence that the vehicle belonged to him and that his female passenger, a convicted drug offender,[3] could have placed the evidence in the glove compartment during the time she was sitting alone in the vehicle.

{¶11} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence submitted at trial, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. The standard of review is

---

[2] Graziani has not appealed the jury's verdict on the second count of the indictment for the aggravated possession of drugs associated with the methamphetamine found with the glass pipes.
[3] Graziani consistently refers to Ms. Fenter as a convicted drug offender and states that she was on parole for a drug offense when the truck was stopped. However, she testified that at the time she was only on probation for shoplifting; she was placed on probation for buying Pseudoephedrine at a later time.

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks*, supra. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶12} Graziani was charged with a violation of R.C. 2925.11(A)(C)(4)(a), which reads in pertinent part that "[n]o person shall knowingly obtain, possess, or use a controlled substance." The Revised Code defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K); *State v. Pierce*, 3d Dist. No. 11-09-05, 2010-Ohio-478, ¶15. The issue of whether a person charged with drug possession knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 1998-Ohio-193, 696 N.E.2d 1049.

{¶13} Drug possession may be shown by either actual or constructive possession. *State v. Pope*, 3d Dist. No. 13-06-05, 2006-Ohio-4318, ¶14. An individual is in constructive possession when he is able to exercise dominion and control over an item even though it is not in his physical possession. *State v. Wolery* (1976), 46 Ohio St.2d 316, 348, N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly* (2000), 137 Ohio

App.3d 134, 141, 738 N.E.2d 93. Ownership of the drugs need not be established for constructive possession. *State v. Mann* (1993) 93 Ohio App.3d 301, 308, 638 N.E.2d 585.

{¶14} The scale with drug residue was found in the glove compartment of the truck that Graziani was driving and using. Although there was no evidence that Graziani owned the truck, such ownership would not be necessary to show he had possession, use, and control of the vehicle and constructive possession of the drug paraphernalia. Deputy Cape testified that Graziani had stated he had borrowed the truck, but there was no evidence that it belonged to anyone else.[4]

{¶15} On appeal, Graziani suggests that Ms. Fenter had close access to the glove compartment and she could have placed the scale in it while the deputy was questioning Graziani. However, Deputy Cape testified that Ms. Fenter was only alone in the vehicle for a very short time, perhaps five to seven minutes; that the interior of the vehicle was illuminated by his patrol lights so he could carefully watch her; that he had told her to sit still for security reasons, and she complied; and that she did not make any furtive movements nor did she do anything that would indicate she was hiding something. Deputy Cape stated, "I just need to make sure that that passenger is not moving for something or trying to do something that could potentially harm me or anybody else." (Trial Tr., p. 126.) The deputy consistently testified that he did not see her make any movements.

---

[4] At the suppression hearing, Graziani consistently testified about "my truck" and the items in the back of "my truck" and did not correct references regarding permission to search "your vehicle."

{¶16} Ms. Fenter also testified, stating that she had told Officer Cape that the scale and pipe were not hers. She repeatedly denied ownership of the items when questioned at trial, and definitively answered that she had not placed the items in the glove compartment or above the visor. She stated that she did not know who the drug-related items belonged to and further testified that "I didn't even know they were in the truck." (Id. at p. 176.)

{¶17} In a case with many similar facts, this Court recently found that there was sufficient evidence to find the defendant had constructive possession of the drug contaminated paraphernalia found in the glove compartment even without evidence that the defendant owned the vehicle and even though he was not occupying the vehicle at the time. See *Pierce*, supra, 2010-Ohio-478. Based upon the totality of the facts and circumstances, and viewing the evidence in a light most favorable to the prosecution, we find that there was sufficient evidence of each of the essential elements of the offense that could convince the average juror of Graziani's guilt beyond a reasonable doubt. Graziani's first assignment of error is overruled.

{¶18} In his second assignment of error, Graziani argues that the trial court erred in overruling his motion to suppress. Graziani had previously stipulated that the deputy had a reasonable and articulable suspicion to initiate the traffic stop. It is also uncontroverted that Graziani consented to a search of the vehicle he was operating. However, Graziani contests the extent of that consent, claiming it was

limited to only the outside truck bed. Furthermore, he argues that his consent was not voluntarily offered, but rather, was given under duress.

{¶19} The standard of review for a motion to suppress has been determined by the Supreme Court of Ohio:

> **Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.** *State v. Mills* **(1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.** *State v. Fanning* **(1982), 1 Ohio St.3d 19, [20], 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.** *State v. McNamara* **(1997), 124 Ohio App.3d 706, 707 N.E.2d 539.**

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8; *State v. Riter*, 3d Dist. No. 4-08-29, 2008-Ohio-6752, ¶3.

{¶20} When an individual voluntarily consents to a search, there is no Fourth Amendment violation. *State v. O'Neal*, 3d Dist. No. 1-07-33, 2008-Ohio-512, ¶27. The question as to whether consent to a search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶99. "The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness,

i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect." Id.

**{¶21}** Furthermore, "when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances ***." *State v. Robinette*, 80 Ohio St.3d 234, 242-43, 1997-Ohio-343, 685 N.E.2d 762, quoting *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248-49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875.

**{¶22}** At the hearing on the motion to suppress, Graziani claimed that he felt he was under duress because he testified that he had been detained for several hours and he believed he was not "going to get to go home." However, Deputy Cape testified that he radioed dispatch as to what was occurring during the traffic stop, and entered the Defiance County Sheriff's Office Detail Call Sheet[5] into evidence. The call sheet showed, and the deputy testified, that the stop was made at approximately 3:22 a.m. Shortly thereafter, he stated that he "asked Mr. Graziani if there was anything illegal inside the vehicle and he stated that there was not at which point I asked for consent to search the vehicle and he gave me consent." (June 12, 2009 Hearing Tr., p. 9.) At that point, he called in the search,

---

[5] The keeper of the records for the call center also testified concerning the records and procedure.

and the call sheet showed "Log Consent to Search" at 3:31 a.m. Several other notations were made, mostly concerning checking the premises at Martin Diesel and contacting the owners. Deputy Cape testified that the search of the vehicle was conducted almost immediately. The call sheet showed the deputies cleared the scene at 4:15 a.m. Deputy Phipps also testified and corroborated Deputy Cape's timeline, confirming that he heard over the radio that Deputy Cape had found the drug paraphernalia prior to his checking the premises at Martin Diesel.

{¶23} Graziani, however, testified that he was detained for "a couple hours" and that the deputy did not ask his permission to search the vehicle until after they had checked the premises at Martin Diesel. Graziani said it had been approximately "two, two and a half hours" before he was asked if the deputy could search the vehicle. Graziani stated that the deputy said, "do I have consent to search your vehicle and I said I guess and that's when he went through my pick-up." Graziani further stated that, "I had already been sitting there and all this time I was wondering, you know, I didn't even think I was going to get to go home. That's why I said yes." (Hearing Tr. p. 38-39.)

{¶24} Not only do the deputies' testimony and the dispatch call records contradict Graziani's story, but even Graziani testified that at the time he said he gave consent to search the vehicle, he was no longer in handcuffs and that he and the other deputy were "joking around" about what he had been doing behind the

building.  (Hearing Tr. p. 37.)  The record does not indicate Graziani was under duress or that the consent to search was coerced.

{¶25} Although Graziani claims he only gave the deputy permission to search the bed of the pick-up truck, the deputy's testimony does not reflect that limitation.  On cross-examination, Graziani's counsel questioned Deputy Cape as follows:

> **Q.     Deputy Cape, exactly what did you say to Mr. Graziani when you asked was there anything illegal?**
>
> **A.     Normally, when I walk up to a vehicle, I'll say is, you know, there anything illegal in your vehicle just to give people an option of, you know, being honest if there is something inside.  Nine times out of ten people say no, there's nothing illegal in here which Mr. Graziani said that there wasn't anything illegal in the vehicle**
>
> **Q.     Do you recall whether he gave consent to search only the bed of the truck?**
>
> **A.     I – I know I never get specific with anything like that.  I'll just always say may I search your vehicle or, you know, do you mind if I take a look through it or something along those lines.  I never get specific on which area.**
>
> **Q.     Do you recall whether he said yes, you can search the truck or yes, you can search the bed of the truck?**
>
> **A.     I don't recall.**
>
> **Q.     You don't recall?  Okay.  Is it possible that he told you you can only search the bed of the truck?**
>
> **A.     I think if somebody would have told me that, I would, you know, I only needed to search one area, I probably would have stuck just to that because, you know, they can tell**

-12-

> **you yes, you can't search this area or no, you can't search that area.**

(Hearing Tr., pp. 17-18.)

{¶26} The trial court found that the testimony of the deputies, including the consideration of the dispatch logs which were effectively a contemporaneous documentation made by the deputies, was more credible than Graziani's version of the events. Based on the totality of the circumstances presented, we conclude that a typical reasonable person would have understood by the exchange between Deputy Cape and Graziani that Graziani gave his voluntary consent to search the entire vehicle. The trial court properly denied the motion to suppress. Accordingly, we overrule this claim of error.

{¶27} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jnc**